United States Court of Appeals
Fifth Circuit

**F I L E D**

**December 15, 2003**

Charles R. Fulbruge III
Clerk

REVISED JANUARY 13, 2004
IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

No. 02-60231

---

IAN SMALLEY

Petitioner

v.

JOHN ASHCROFT, ATTORNEY GENERAL

Respondent

---

Petition for Review of an Order of the
Board of Immigration Appeals

---

Before KING, Chief Judge, and DAVIS and EMILIO M. GARZA, Circuit
Judges.

KING, Chief Judge:

Ian Smalley petitions this court to review a March 8, 2002,
decision of the Board of Immigration Appeals ordering him
deported for overstaying his visa and denying his application for
an adjustment of status because he had committed a crime
involving moral turpitude. For the following reasons, the
petition is DISMISSED.

## I. BACKGROUND

Smalley, a citizen of the United Kingdom, legally entered
the United States in 1982 with permission to remain for one year.

1

Without authorization, Smalley overstayed his visa.  Before his arrival, Smalley had been convicted of "Fraudulent Trading," in violation of Section 332(3) of the Companies Act of 1948, in London, England.  In January 1993, while Smalley remained in the United States without permission, he pleaded guilty to "Interstate Travel in Aid of Racketeering Enterprise," in violation of 18 U.S.C. § 1952.

On October 26, 1994, the Immigration and Naturalization Service ("INS") served Smalley with an Order to Show Cause, charging him with being a deportable alien for two reasons: first, because he had remained in the United States for a time longer than permitted, see Immigration and Nationality Act ("INA") § 241(a)(1)(B), 8 U.S.C. § 1251(a)(1)(B) (1994);[1] and second, because he had committed a crime of moral turpitude and was, therefore, an alien excludable at the time of entry, see INA § 241(a)(1)(A), 8 U.S.C. § 1251(a)(1)(A) (1994).  The INS argued that Smalley's 1981 London conviction and his 1993 U.S. conviction qualified as crimes of moral turpitude and that each was sufficient to sustain the second ground of deportability.

Smalley's immigration case was administratively closed in December 1995, while his wife, a U.S. citizen, submitted a

---

[1]     Section 241 of the INA, 8 U.S.C. 1251 (1994), was renumbered by the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") of 1996, Pub. L. No. 104-208, § 305(a)(2), 110 Stat. 3009-546, -598, and now appears in § 237 of the INA, 8 U.S.C. § 1227 (2000).

petition for Smalley to receive a visa as her immediate relative. In June 1998, after the petition was granted, Smalley asked the Immigration Judge ("IJ") to consider adjusting his status (to that of a lawful permanent resident) under INA § 245, 8 U.S.C. § 1255 (2000). But on October 24, 1998, the INS lodged an additional ground of deportability against Smalley, arguing that his 1993 conviction constituted an aggravated felony as that term is defined in INA § 101(a)(43)(B), (D), and (U), 8 U.S.C. § 1101(a)(43)(B), (D), and (U) (2000).

In August 2000, after holding a hearing on all of the outstanding issues, the IJ concluded that Smalley was not deportable as an alien excludable at the time of entry because his foreign fraudulent trading conviction was not for a crime involving moral turpitude ("CIMT"). In addition, the IJ concluded that Smalley's conviction under 18 U.S.C. § 1952, after he entered the United States, did not constitute an aggravated felony. Nevertheless, the IJ held that Smalley was deportable under INA § 241(a)(1)(B), 8 U.S.C. § 1251(a)(1)(B) (1994), because he had illegally overstayed his visa. The IJ next addressed whether Smalley qualified for an adjustment of status. After reviewing the 1993 conviction, the IJ found that Smalley had "effectively admitted to acts which constitute" money laundering under 18 U.S.C. § 1956(a)(3)(B) (2000): Smalley had pleaded guilty to agreeing to conduct a financial transaction to disguise money that he believed was the proceeds of illegal drug

3

activity.  Because he found that Smalley's conviction for laundering drug money constituted a CIMT, he held that Smalley was not an "admissible" alien eligible for a status adjustment under INA § 245(a), 8 U.S.C. § 1255(a).  Instead, to obtain a waiver of his inadmissibility under INA § 212(h), 8 U.S.C. § 1182(h) (2000), Smalley had to demonstrate that his deportation would cause extreme hardship to his wife.  Ultimately, the IJ denied Smalley's request for a discretionary waiver but did grant him permission to voluntarily depart the United States instead of being forcibly deported.

Both parties appealed the IJ's decision to the Board of Immigration Appeals ("BIA"), which confirmed Smalley's deportability for overstaying his visa.  The BIA also affirmed the IJ's denial of Smalley's application for an adjustment of status on the basis that Smalley's 1993 conviction for violating 18 U.S.C. § 1952 qualified as a CIMT.  As an alien convicted of such a crime, the BIA agreed with the IJ that Smalley was ineligible for a discretionary adjustment of status unless he first received a waiver of his criminal inadmissibility under INA § 212(h), 8 U.S.C. § 1182(h).  Nevertheless, the BIA held that the IJ had not given Smalley adequate notice to present his position regarding the waiver issue, and it remanded the case to the IJ.

On remand, the IJ heard additional testimony concerning the hardship Smalley's wife would face if he were deported.  The IJ

4

recommended that Smalley's inadmissibility for committing a CIMT be waived and that he then be granted an adjustment of status. The BIA declined to follow these recommendations, however, and on March 8, 2002, the BIA denied the discretionary waiver and ordered that Smalley be "deported from the United States to Portugal"[2] without addressing the IJ's August 2000 decision to grant Smalley a voluntary departure. Smalley filed a petition for review of the BIA's deportation decision in this court. On July 15, 2002, the government filed a motion to dismiss, claiming that federal appellate courts lack jurisdiction to review a BIA decision to deport an alien who has committed a CIMT. This motion was carried with the case.

## II. DISCUSSION

### A. Jurisdiction

Before addressing the merits of the petition, we must first determine whether we have appellate jurisdiction over the BIA's deportation order. Nehme v. INS, 252 F.3d 415, 420 (5th Cir. 2001). In 1996, Congress sought to curb appellate review of BIA deportation decisions through the IIRIRA. As we explained in Nguyen v. INS, 208 F.3d 528 (5th Cir. 2000), a set of transitional rules applies to cases in which an alien's criminal deportation proceedings "commence before IIRIRA's general

---

[2]    Admitting that a bench warrant for his arrest is extant in his native country, Smalley requested that he be deported to Portugal instead of the United Kingdom.

effective date of April 1, 1997, and conclude more than thirty days after its passage on September 30, 1996." Id. at 531. Specifically, the transitional rules state that "there shall be no appeal permitted in the case of an alien who is inadmissible or deportable by reason of having committed a criminal offense covered in section 212(a)(2) . . . of the [INA] (as in effect as of the date of the enactment of this Act)." IIRIRA of 1996, Pub. L. No. 104-208, § 309(c)(4)(G), 110 Stat. 3009-546, -626 to -627. Section § 309(c)(4)(G) thus appears to deprive this court of jurisdiction over Smalley's petition for review because (1) the INS initiated deportation proceedings against Smalley in October 1994; (2) these proceedings concluded on March 8, 2002; and (3) the BIA found that Smalley's money laundering conviction qualified as a CIMT, making him inadmissible under § 212(a)(2) of the INA--as it existed when the IIRIRA was enacted. See 8 U.S.C. § 1182(a)(2)(A)(i)(I) (1994) (stating that "any alien convicted of . . . acts which constitute the essential elements of--a crime involving moral turpitude" "shall be excluded from admission into the United States").

Nevertheless, before we may conclude that the IIRIRA completely forecloses our jurisdiction to review Smalley's deportation order, we must first determine whether the jurisdictional facts required for § 309(c)(4)(G)'s bar to operate are present in this case. Nguyen, 208 F.3d at 531. As we clarified in Nehme, "we always have jurisdiction to consider

6

whether the specific conditions exist that bar our jurisdiction over the merits, namely, whether the petitioner is (1) an alien, (2) who is deportable, (3) for committing the type of crime that bars our review." 252 F.3d at 420 (discussing the IIRIRA's nearly identical "final" rules of judicial review, codified at 8 U.S.C. § 1252 (2000)); accord Okoro v. INS, 125 F.3d 920, 925 n.10 (5th Cir. 1997).

In his petition for review, Smalley concedes both that he is an alien and that he is deportable for overstaying his visa. He disagrees with the BIA, however, that his 1993 conviction for agreeing to launder drug money constitutes a CIMT; therefore, he argues that § 309(c)(4)(G) does not bar us from reviewing the BIA's deportation order. Whether Smalley's crime involved moral turpitude is a question of law that must be answered in the affirmative in order for the IIRIRA's jurisdictional bar to operate; therefore, we hold (as our precedent requires) that we have the authority to review this "jurisdictional fact." See Balogun v. Ashcroft, 270 F.3d 274, 278 (5th Cir. 2001) (explaining that "we retain jurisdiction to review jurisdictional facts" in immigration cases).

## B.  Crime Involving Moral Turpitude

The INA "does not define the term 'moral turpitude' and legislative history does not reveal congressional intent" regarding which crimes are turpitudinous. Pichardo v. INS, 104

F.3d 756, 759 (5th Cir. 1997). Instead, Congress left the interpretation of this phrase to both the BIA and the federal courts. Okoro, 125 F.3d at 926. In light of these observations, our precedents apply a two-part standard of review to the BIA's conclusion that an alien has committed a CIMT. First, we accord "substantial deference to the BIA's interpretation of the INA" and its definition of the phrase "moral turpitude." Id. at 926. Second, we review de novo whether the elements of a state or federal crime fit the BIA's definition of a CIMT. See Omagah v. Ashcroft, 288 F.3d 254, 258 (5th Cir. 2002); Okoro, 125 F.3d at 926. Importantly, this two-step approach provides both consistency--concerning the meaning of moral turpitude--and a proper regard for the BIA's administrative role--interpretation of federal immigration laws, not state and federal criminal statutes. Id. ("Determining a particular federal or state crime's elements lies beyond the scope of the BIA's delegated power or accumulated expertise."); see also Michel v. INS, 206 F.3d 253, 262 (2d Cir. 2000).

Through its administrative decisions, the BIA has crafted the following definition of moral turpitude:

> Moral turpitude refers generally to conduct that shocks the public conscience as being inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general. Moral turpitude has been defined as an act which is per se morally reprehensible and intrinsically wrong, or malum in se, so it is the nature of the act itself and not the statutory prohibition of it which renders a crime one of moral turpitude. Among the tests

8

> to determine if a crime involves moral turpitude is whether the act is accompanied by a vicious motive or a corrupt mind.

Hamdan v. INS, 98 F.3d 183, 186 (5th Cir. 1996) (quoting the BIA's decision in that case) (internal citations omitted). In the past, we have adopted the BIA's definition as a reasonable interpretation of the INA. Id.; see also Omaqah, 288 F.3d at 259-60. We categorically apply this definition of moral turpitude to an alien's crime: "[w]hether a crime involves moral turpitude depends on the inherent nature of the crime, as defined in the statute concerned, rather than the circumstances surrounding the particular transgression." Okoro, 125 F.3d at 926. A crime involves moral turpitude only if all of the conduct it prohibits is turpitudinous. Hamdan, 98 F.3d at 187. "An exception to this general rule is made if the statute is divisible into discrete subsections of acts that are and those that are not CIMTs." Id. In this situation, we look at the alien's record of conviction to determine whether he "has been convicted of a subsection" that qualifies as a CIMT. Id.; see also Omaqah, 288 F.3d at 260.

In 1993, Smalley pleaded guilty to "Interstate Travel in Aid of Racketeering Enterprise" under 18 U.S.C. § 1952. Section 1952 penalizes a defendant who "travels in interstate or foreign commerce or uses the mail or any facility in interstate or foreign commerce, with intent to . . . facilitate the promotion, management, establishment, or carrying on, of any unlawful

9

activity." 18 U.S.C. 1952(a)(3) (2000).[3] Because § 1952 covers defendants who intend to facilitate a broad range of "unlawful activity," the BIA correctly noted in its April 11, 2001, order that this statute "encompasses" both "conduct that is turpitudinous and conduct that is not." Thus, we must determine whether Smalley's crime, as charged, falls within a narrow subsection of the statute that only covers turpitudinous acts. See Hamdan, 98 F.3d at 187.

According to the criminal information, Smalley pleaded guilty to "travel[ing] in interstate commerce with intent to facilitate the carrying on of an unlawful activity; namely, money laundering in violation of Title 18 . . . § 1956(a)(3)(B)." See 18 U.S.C. § 1952(b)(3) (defining "unlawful activity" to include offenses committed under 18 U.S.C. § 1956). This subsection of § 1956 prohibits "money laundering" of certain illegal funds:

(3) Whoever, with the intent--
. . .
(B) to conceal or disguise the nature, location, source, ownership, or control of property believed to be the proceeds of specified unlawful activity
. . .
conducts or attempts to conduct a financial transaction involving property represented to be the proceeds of specified unlawful activity, or property used to conduct or facilitate specified unlawful activity, shall be [found guilty of this offense].

---

[3] The relevant language of § 1952(a) and (b)(3) has not been amended since Smalley's 1993 conviction.

10

18 U.S.C. § 1956(a)(3)(B) (2000).[4]  Viewed narrowly, Smalley

pleaded guilty to traveling in interstate commerce with the

intent to facilitate the crime defined in this statutory

subsection: conducting a financial transaction to conceal the

proceeds of a specified unlawful activity.  According to the

criminal information, Smalley believed that the money he agreed

to conceal was the proceeds of illegal drug transactions, one of

the specified unlawful activities in § 1956.[5]

In his petition for review, Smalley asks this court to

ignore the fact that he believed the money he agreed to conceal

was the proceeds of illegal drug sales and focus instead on the

question whether money laundering, as a whole, is turpitudinous.

But, at oral argument, Smalley conceded that the government would

have had to prove this fact in order to convict him of intending

to facilitate an offense prohibited by § 1956(a)(3)(B).  This

concession demonstrates the flaw in Smalley's argument; we have

emphasized that, in our categorical analysis of whether a crime

involves moral turpitude, the answer depends upon our analysis of

the elements of the crime that the government must prove before

---

[4]    The relevant language of § 1956(a)(3)(B) has not been amended since Smalley's 1993 conviction.

[5]    Section 1956(c)(7) includes, in its definition of "specified unlawful activity," "any act or activity constituting an offense listed under section 1961(1) of this title."  18 U.S.C. § 1956(c)(7)(A).  Further, "buying, selling, or otherwise dealing in narcotic or other dangerous drugs" was one of the offenses enumerated by § 1961(1) when Smalley was convicted.  See 18 U.S.C. § 1961(1)(D) (1988).

11

obtaining a conviction. Omagah, 288 F.3d at 260; see also id. at 261 (concluding that parsing a crime's statutory language to determine which of its elements were met in a particular case, before deciding whether the crime was a CIMT, is appropriate under our precedent); cf. Johnson v. INS, 971 F.2d 340, 342-43 (9th Cir. 1992) (rejecting a similar challenge to including the type of "unlawful activity" prohibited by § 1952 in the court's categorical analysis of whether an alien's crime was an "aggravated felony" under the INA).

In sum, this court must decide whether Smalley's 1993 crime--traveling in interstate commerce with the intent "to conceal or disguise the nature, location, source, ownership, or control of property believed to the proceeds" of unlawful drug activity--qualifies as a CIMT. 18 U.S.C. § 1956(a)(3)(B). The government argues that moral turpitude inheres in this crime because Smalley had the intent "to conceal or disguise" the source of illegal drug money when he committed the offense. This argument draws support from our recent observation that "[c]rimes including dishonesty or lying as an essential element involve moral turpitude." Omagah, 288 F.3d at 260. Moreover, the government contends that Smalley's offense was inherently fraudulent under our precedent, which explains that fraud may be inferred from "'conduct, the likely effect of which would be to mislead or conceal.'" Payne v. Comm'r, 224 F.3d 415, 420 (5th Cir. 2000) (quoting Spies v. United States, 317 U.S. 492, 499

12

(1943)).  If we agree, then we must conclude that Smalley

committed a CIMT because, as the government points out, "fraud

has consistently been regarded as such a contaminating component

in any crime that American courts have, without exception,

included such crimes within the scope of moral turpitude."

Jordan v. De George, 341 U.S. 223, 229 (1951); accord Balogun v.

Ashcroft, 270 F.3d 274, 278-79 (5th Cir. 2001).

Smalley attempts to rebut the government's assertion that

his crime was inherently fraudulent by noting that fraud is not

part of the language of either § 1952(a) or § 1956(a)(3)(B).  The

Ninth Circuit has aptly noted, however, that "[e]ven if intent to

defraud is not explicit in the statutory definition, a crime

nevertheless may involve moral turpitude if such intent is

'implicit in the nature of the crime.'"  Goldeshtein v. INS, 8

F.3d 645, 648 (9th Cir. 1993) (quoting Winestock v. INS, 576 F.2d

234, 235 (9th Cir. 1978)); accord In re Flores, 17 I. & N. Dec.

225, 228 (BIA 1980).  Smalley stridently disagrees that his

offense is implicitly fraudulent and therefore turpitudinous,

however, because he analogizes money laundering to the regulatory

crime of structuring financial transactions to evade reporting

requirements under 31 U.S.C. § 5324, which both the BIA and the

Ninth Circuit have held is neither fraudulent nor a CIMT.  See

Goldeshtein, 8 F.3d at 648; In re L-V-C-, 22 I. & N. Dec. 594,

602 (BIA 1999) (following Goldeshtein).

We disagree that Smalley's offense, as we have defined it

13

above, has the same moral import as a financial structuring crime. Section 5324 makes it unlawful for a person to "structure . . . any transaction with one or more domestic financial institutions" "for the purpose of evading . . . reporting requirements." 31 U.S.C. § 5324(a)(3) (2000). The Ninth Circuit has held that violations of this statute, even when they are willful, do not constitute CIMTs because "section 5324 requires no intent to defraud the government." Goldeshtein, 8 F.3d at 648. Smalley's attempt to apply this conclusion to his benefit is, however, unconvincing. First, unlike the crime to which Smalley pleaded guilty, a § 5324 conviction "requires only structuring to avoid a reporting requirement," which is not an activity that in and of itself appears criminal, see id. at 647-48, or "inherently fraudulent." Id. at 648 (citing United States v. Varbel, 780 F.2d 758, 762 (9th Cir. 1986)). This lack of an "evil intent" has led the Ninth Circuit to conclude that the structuring crime does not involve "deceit, graft, trickery, or dishonest means" and is not, therefore, turpitudinous. Id. at 648-49.

We believe that Smalley's offense, however, is both "per se morally reprehensible" and "contrary to the accepted rules of morality" in our society: qualities which meet the definition of moral turpitude crafted by the BIA and which set his actions apart from defendants who have engaged in regulatory offenses. See Hamdan, 98 F.3d at 186 (quoting BIA decision). As the Ninth

14

Circuit noted, when a defendant commits a structuring crime, he merely chooses to "conduct cash transactions in amounts of less than $10,000 with the intent to prevent reporting." Goldeshtein, 8 F.3d at 649. His goal, for example, might be simply to avoid the hassle of filling out the paperwork required for reporting purposes. Smalley provides no similarly innocent explanation that might accompany the act of intentionally concealing the proceeds of illegal drug sales. Money laundering provides drug dealers with the means to carry on their unlawful drug trade; intentionally facilitating this enterprise is certainly morally reprehensible. In addition, because of the great toll that drugs have exacted from our society, Smalley's agreement to conceal drug money was clearly "contrary to the accepted rules of morality." The Supreme Court has described, by contrast, the "minimal" harm caused by a defendant who has violated a mere reporting requirement:

> Failure to report his currency affected only one party, the Government, and in a relatively minor way. There was no fraud on the United States, and respondent caused no loss to the public fisc. Had his crime gone undetected, the Government would have been deprived only of the information [about the transaction].

United States v. Bajakajian, 524 U.S. 321, 339 (1998). For both of these reasons, we do not agree with Smalley's assertion that his facilitation of the drug trade is analogous to the non-CIMT crime of evading financial reporting requirements.

Smalley also attempts to draw an analogy between his

15

agreement to "conceal or disguise" the proceeds of unlawful drug transactions and the crime of "misprision of a felony" found in 18 U.S.C. § 4. The misprision statute, he notes, makes it a crime for someone who has "knowledge of the actual commission of a felony" to "conceal[]" this knowledge from the authorities. 18 U.S.C. § 4 (2000). While we agree that § 4 and § 1956(a)(3)(B) may, in fact, involve a similar degree of moral turpitude, we fail to see how this analogy counsels against our conclusion in this case. The Eleventh Circuit has held that a misprision offense "is a crime of moral turpitude because it necessarily involves an affirmative act of concealment or participation in a felony, behavior that runs contrary to accepted societal duties and involves dishonest or fraudulent activity." <u>Itani v. Ashcroft</u>, 298 F.3d 1213, 1216 (11th Cir. 2002).[6] In our opinion, this decision provides strong support for concluding that crimes involving the intentional concealment of illegal drug activity are intrinsically wrong and, therefore, turpitudinous. Because we find that Smalley has been convicted of a CIMT, we hold that IIRIRA § 309(c)(4)(G) precludes our jurisdiction over his final order of deportation.

Having concluded that we lack jurisdiction over Smalley's

---

[6] We note that while the BIA has held otherwise, this decision lacks any precedential value because it was overruled in 1968 by the United States Attorney General. <u>In re Sloan</u>, 12 I. & N. Dec. 840, 853, 854 (Op. Att'y Gen. 1968) (reversing a 1966 BIA decision, which had held that misprision of a felony is not a CIMT).

16

Petition for Review, we may not address the issue of whether the BIA improperly ordered Smalley deported without affirming the IJ's August 2000 decision to grant a voluntary departure.  See IIRIRA § 309(c)(4)(G) (stating that "there shall be no appeal permitted in the case of an alien who is inadmissible" for having committed a CIMT); cf. Okoro, 125 F.3d at 927 (concluding, after finding that jurisdiction over an alien's appeal was precluded by the IIRIRA, that "[w]e therefore do not reach [the alien's] other claims").[7]

### III. CONCLUSION

Accordingly, because we lack jurisdiction to review the BIA's deportation order, we DISMISS the petition for review.

---

[7] IIRIRA § 309(c)(4)(E) also prevents us from reaching this issue because it removes our "jurisdiction to review claims for discretionary relief, including claims regarding voluntary departure."  Eyoum v. INS, 125 F.3d 889, 891 (5th Cir. 1997).