

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-17-2004

# Knapik v. Atty Gen USA

Precedential or Non-Precedential: Precedential

Docket No. 03-2787

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Knapik v. Atty Gen USA" (2004). *2004 Decisions.* Paper 278.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/278

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES
COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 03-2787

_____

JAN KNAPIK,

Petitioner

v.

*JOHN ASHCROFT, Attorney General
of the United States

Respondent

_____

On Petition for Review
of a Final Order of the
Board of Immigration Appeals
(No. A74-902-513)

_____

Argued June 25, 2004

Before: AMBRO, BECKER and
GREENBERG, Circuit Judges

(Opinion filed : September 17, 2004)

Steven Lyons, Esquire (Argued)
Martin C. Liu and Associates, PLLC
627 Greenwich St., 12th Floor
New York, NY  10014

*Attorney for Petitioner*

Peter D. Keisler
Assistant Attorney General, Civil Division
Emily Anne Radford, Esquire
Assistant Director
Douglas E. Ginsburg, Esquire
John M. McAdams, Jr., Esquire
Aviva L. Poczter, Esquire
Nicole Nardone, Esquire (Argued)
Department of Justice Civil Division
Office of Immigration Litigation
P.O. Box 878
Ben Franklin Station
Washington, DC  20044

*Attorneys for Respondent*

_____

OPINION OF THE COURT

_____

AMBRO, Circuit Judge

Jan Knapik challenges the decision
of the Board of Immigration Appeals
(BIA) that his conviction for attempted
reckless endangerment is a crime
involving moral turpitude under
§ 237(a)(2)(A)(i) of the Immigration and
Nationality Act ("INA"), 8 U.S.C.
§ 1227(a)(2)(A)(i).  Knapik argues that
crimes with a *mens rea* no greater than
recklessness cannot involve moral
turpitude because such crimes require
intent.  He also argues that, even assuming
reckless endangerment is a crime
involving moral turpitude, attempted
reckless endangerment is not.  For the
reasons that follow, we affirm the BIA's
determination that the reckless
endangerment statute in this case defines a

crime involving moral turpitude, but we agree with Knapik that his conviction for attempted reckless endangerment is not such a crime.

## I. Factual and Procedural Background

Knapik is a citizen of Slovakia. He legally entered the United States in June 1995. On September 16, 1996, he adjusted his status to that of lawful permanent resident. He resides in New Jersey with his father and sister who are both lawful permanent residents. In August 2000, Knapik pled guilty to the crime of attempted reckless endangerment in the first degree in violation of New York Penal Law § 120.25.[1] The plea arose from an incident in which, while intoxicated, Knapik drove at an excessive rate of speed against the flow of traffic on the Staten Island Expressway. He pled guilty, was sentenced to and served four months in jail.

In April 2000, the Immigration and Nationalization Service (INS)[2] served

Knapik with a notice to appear, charging him with removability under 8 U.S.C. § 1227(a)(2)(A)(i), which allows the Attorney General to order the removal of any alien who has been convicted of a crime involving moral turpitude within five years of admission and for which a sentence of one year or more may be imposed. At the removal hearing, the Immigration Judge ("IJ") held that Knapik's conviction constitutes a crime involving moral turpitude and ordered him removed from the United States. Knapik timely appealed to the BIA.

In May 2003, the BIA affirmed the IJ's decision. The BIA first observed that attempt offenses are crimes involving moral turpitude if the underlying offense involves moral turpitude. The BIA next addressed the issue of criminal recklessness. Relying on prior decisions, it concluded that moral turpitude can lie in criminally reckless behavior. The BIA also examined the aggravating factors in New York's reckless endangerment statute, analogized to prior BIA cases involving manslaughter and assault with a deadly weapon, and distinguished prior BIA cases involving simple assault. Taken together, the BIA concluded that the elements of depravity, recklessness and grave risk of death to another person are sufficient to establish moral turpitude.

Knapik timely filed a petition for review of the BIA's decision. We have

---

[1] Section 120.25 provides: "A person is guilty of reckless endangerment in the first degree when, under circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person."

[2] On March 1, 2003, the INS ceased to exist as an independent agency within the United States Department of Justice and the INS's functions were transferred to the Department of Homeland Security. *See* Homeland Security Act of 2002, Pub.

L. No. 107-296, §§ 441, 451, 471, 116 Stat. 2135 (2002). The BIA remains within the Department of Justice.

jurisdiction to review final orders of removal pursuant to 8 U.S.C. § 1252(a).

## II. Standard of Review

Under Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837 (1984), we review an agency's construction of a statute it administers under a two-step inquiry. If congressional intent is clear from the statute's language, we must give effect to it as written. Id. at 842-43. If Congress's intent is silent or ambiguous, we must decide if the agency's action is based on "a permissible construction of the statute." Id. at 843.

We afford deference, however, only when an agency construes or interprets a statute it administers. See id. at 843-44. In Francis v. Reno, we refused to afford Chevron deference to the BIA's interpretation of the term "felony" as used in 18 U.S.C. § 16 because it is a general criminal statute not implicating the BIA's expertise. 269 F.3d 162, 168 (3d Cir. 2001). In Sandoval v. Reno, we declined to give deference to the BIA's decision as to the effective date of a statute because the "issue [of] a statute's effective date is not one that implicates agency expertise in a meaningful way. . . ." 166 F.3d 225, 239 (3d Cir. 1999). Accordingly, we must decide which aspects of the BIA's decision are entitled to Chevron deference.

Knapik argues that Chevron deference applies only to what "moral turpitude" means,[3] not to what crimes that

term encompasses. Particularly, he contends the BIA's determination that recklessness crimes may constitute moral turpitude is not entitled to deference. The First, Second, Fifth and Eighth Circuits, however, have concluded that courts should defer not only to the BIA's definition of moral turpitude but also to its determination that the elements of a criminal statute satisfy that definition. See Cabral v. INS, 15 F.3d 193, 195 (1st Cir. 1994) ("We therefore inquire whether the agency interpretation was arbitrary, capricious, or clearly contrary to the statute."); Michel v. INS, 206 F.3d 253, 263 (2d Cir. 2000) (stating that "in order to affirm the BIA's determination [in regard to moral turpitude], we need only conclude that its interpretation is reasonable and that it 'considered the matter in a detailed and reasoned fashion'" (citation omitted)); Hamdan v. INS, 98 F.3d 183, 184-85 (5th Cir. 1996) ("We accord deference to the BIA's interpretation of questions such as those before us here" — *i.e.*, whether Hamden's record of conviction "support[s] a finding of moral turpitude."); Franklin v.

---

[3] We clearly afford Chevron deference to the BIA's definition of

"moral turpitude." The term is not defined in the INA, and "legislative history leaves no doubt . . . that Congress left the term 'crime involving moral turpitude' to future administrative and judicial interpretation." Cabral v. INS, 15 F.3d 193, 195 (1st Cir. 1994); see also Jordan v. De George, 341 U.S. 223, 234 (1951) (Jackson, J., dissenting) (stating that "Congress did not see fit to state what meaning it attributes to the phrase 'crime involving moral turpitude'").

INS, 72 F.3d 571, 572 (8th Cir. 1995) (stating "we must decide whether the BIA has reasonably interpreted its statutory mandate to deport aliens convicted of crimes involving moral turpitude"). In contrast, the Ninth Circuit reviews *de novo* whether a particular criminal statute involves moral turpitude. See, e.g., Rodriguez-Herrera v. INS, 52 F.3d 238, 240 n.4 (9th Cir. 1995); cf. Franklin, 72 F.3d at 578 (Bennett, J., dissenting) (recognizing "a split of authority, or, at least, a fundamental difference in approach to or perception of the issue").

We adopt the majority position and conclude that the BIA's determination that reckless endangerment crimes may involve moral turpitude is entitled to Chevron deference. This issue goes to the heart of the administrative scheme established under the INA. In this context, the BIA's conclusions as to reckless endangerment implicate BIA expertise.

But in determining what the elements are of a particular criminal statute deemed to implicate moral turpitude, we do not defer to the BIA. See Michel, 206 F.3d at 262 (stating that when "the BIA is interpreting state or federal criminal laws, we must review its decision *de novo*" (citing Hamdan, 98 F.3d at 185)). As discussed below, it is unclear what the elements of attempted reckless endangerment (as opposed to reckless endangerment) even are. This is not an issue that implicates the BIA's expertise, and we decline to afford Chevron deference to the BIA's decision relating to this matter. Our review of this issue is thus *de novo*.

### III. Analysis

An alien, even if a lawful permanent resident, is subject to removal if he or she has been convicted of a crime "involving moral turpitude" within five years of the date of admission and the conviction is one for which a sentence of one year or longer may be imposed. 8 U.S.C. § 1227(a)(2)(A)(i)(I)-(II). As for the length of sentence requirement, though Knapik received but a four month sentence, first degree reckless endangerment is a class D felony, N.Y. Penal Law § 120.25, punishable by up to seven years imprisonment, id. at § 70.00(2)(d).

Thus the only issue we must decide is whether attempted reckless endangerment in the first degree is a crime involving moral turpitude. This inquiry entails a categorical approach, focusing on the underlying criminal statute "rather than the alien's specific act." De Leon-Reynoso v. Ashcroft, 293 F.3d 633, 635 (3d Cir. 2002) (citing Alleyne v. INS, 879 F.2d 1177, 1185 (3d Cir. 1989)); see also Rodriguez-Herrera, 52 F.3d at 239-40 (stating that, in analyzing whether a crime involves moral turpitude, "we must focus on the crime categorically as defined by the statute, and not on the specific conduct of Rodriguez-Herrera"). Accordingly, "we look to the elements of the statutory state offense, not to the specific facts. We rely on 'what the convicting court must necessarily have found to support the conviction and not to other conduct in which the defendant may have engaged in connection with the offense.'" Wilson v. Ashcroft, 350 F.3d 377, 381-82 (3d. Cir.

4

2003) (quoting Steele v. Blackman, 236 F.3d 130, 135 (3d Cir.2001)).[4]

Following the categorical approach, and in light of our deferential review on the issue, the BIA did not act unreasonably in determining that New York's reckless endangerment statute defines a crime involving moral turpitude. But reviewing *de novo* the BIA's conclusions as to attempted reckless endangerment, we conclude that the categorical nature of the moral turpitude inquiry compels the conclusion that this crime does not involve moral turpitude.

## A. Reckless Endangerment

The BIA in this case defined moral turpitude as conduct that is inherently base, vile, or depraved, contrary to the accepted rules of morality and the duties owed other persons, either individually or to society in general. The BIA also noted that moral turpitude normally includes only acts that are *malum in se* (*i.e.*, an act that is inherently immoral). These statements are in accord with long-established BIA principles, see, e.g.,

---

[4] Wilson is not a moral turpitude case. The language quoted related to determining whether Wilson's state drug conviction constituted an "aggravated felony" under 8 U.S.C. § 1101(a)(43). See Wilson, 350 F.3d at 380-82. While aggravated felony cases may be irrelevant to the moral turpitude inquiry, we nonetheless have endorsed a categorical approach for both types of cases. In this context, we believe the discussion in Wilson and similar cases is instructive.

Matter of Franklin, 20 I. & N. Dec. 867, 868 (BIA 1994); Matter of Danesh, 19 I. & N. Dec. 669, 670 (BIA 1988), and decisions of our Court, see, e.g., De Leon-Reynoso, 293 F.3d at 636 (quoting with approval the following definitions of moral turpitude: (1) "[c]onduct that is contrary to justice, honesty, or morality"; and (2) "anything done contrary to justice, honesty, principle, or good morals" (citations omitted)). As such, the BIA's definition of moral turpitude was reasonable.

Applying the BIA's definition, the New York statute under which Knapik was convicted does not contain an intent requirement. To repeat, N.Y. Penal Law § 120.25 provides that a "person is guilty of reckless endangerment in the first degree when, under circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person."

Knapik correctly notes that a strain of BIA decisions equates moral turpitude with evil intent. Matter of Khourn, 21 I. & N. Dec. 1041, 1046 (BIA 1997) (stating the BIA "has held that 'evil intent' is a requisite element for a crime involving moral turpitude" (citing Matter of Serna, 20 I. & N. Dec. 579, 582 (BIA 1992)). Matter of Flores, 17 I. & N. Dec. 225, 227 (BIA 1980) (stating "evil or malicious intent is said to be the essence of moral turpitude"); Matter of Abreu-Semino, 12 I. & N. Dec. 775, 777 (BIA 1968) (concluding "crimes in which evil intent is not an element, no matter how serious the act or how harmful the consequences, do

not involve moral turpitude").

In this vein, prior to 1976 the BIA was of the opinion that criminally reckless conduct was not so debased as to involve moral turpitude. See, e.g., Matter of Gantus-Bobadilla, 13 I. & N. Dec. 777 (BIA 1971). But in Matter of Medina the BIA reconsidered its position and concluded "that moral turpitude can lie in criminally reckless conduct." 15 I. & N. Dec. 611, 613 (BIA 1976). Examining the Illinois definition of recklessness, the BIA found persuasive that a

> person acting recklessly must *consciously* disregard a *substantial* and *unjustifiable* risk, and such disregard must constitute a *gross* deviation from the standard of care which a reasonable person would exercise in the situation. This definition of recklessness requires an actual awareness of the risk created by the criminal violator's action.

Id. at 613-14 (emphasis in text).

In the twenty-eight years since Medina, the BIA consistently has interpreted moral turpitude to include recklessness crimes if certain statutory aggravating factors are present. For example, the BIA limits moral turpitude to crimes in which a defendant consciously disregards a substantial risk of serious harm or death to another. Thus recklessness crimes for assault with a deadly weapon, Matter of Medina, or manslaughter, Matter of Franklin, 20 I. &

N. Dec. at 870-71, and Matter of Wojtkow, 18 I. & N. Dec. 111, 113 (BIA 1981), involve moral turpitude. Simple assault does not. Matter of Fualaau, 21 I. & N. Dec. 475, 478 (BIA 1996).

We hold that the BIA did not act unreasonably in concluding New York's first degree reckless endangerment statute is a crime involving moral turpitude. First degree reckless endangerment is a much more severe offense than drunk driving, which almost certainly does not involve moral turpitude. See Matter of Lopez-Meza, 22 I. & N. Dec. 1188 (BIA 1999) (expressing opinion that "a simple DUI offense" will almost never rise to the level of moral turpitude); cf. Dalton v. Ashcroft, 257 F.3d 200, 205-06 (2d Cir. 2001) (concluding that New York's "driving while intoxicated" statute does not constitute a "crime of violence" under the INA). New York Penal Law § 120.25 contains aggravating factors, requiring that a defendant create a "grave risk of death to another person" "under circumstances evincing a depraved indifference to human life." In this context, the BIA could reasonably conclude that the elements of depravity, recklessness and grave risk of death, when considered together, implicate accepted rules of morality and the duties owed to society. Cf. Franklin, 72 F.3d at 573 ("In the framework of our deferential review, we cannot say the BIA has gone beyond the bounds of reasonableness in finding that an alien who recklessly causes the death of her child by consciously disregarding a substantial and unjustifiable risk to life has committed a crime that

6

involves moral turpitude.").[5]

## B. Attempted Reckless Endangerment

We do not disagree with previous BIA decisions concluding attempt offenses can be crimes involving moral turpitude. See, e.g., Matter of Davis, 20 I. & N. Dec. 536, 545 (BIA 1992) (stating "[t]here is no distinction for immigration purposes in respect to moral turpitude, between the commission of the substantive crime and the attempt to commit it" (citation omitted)). We also take no issue with previous BIA decisions that it cannot go behind a valid final record of conviction — i.e., that the BIA cannot examine the particular facts of a case. See, e.g., Matter of C-, 20 I. & N. Dec. 529, 532 (BIA 1992). In its opinion in this case, however, the BIA glosses over the peculiar conflict between attempt crimes and recklessness.[6]

Under New York law, a "person is guilty of an attempt to commit a crime when, with *intent* to commit a crime, he [or she] engages in conduct which tends to effect the commission of such crime." People v. Kassebaum, 744 N.E. 2d 694, 698 (N.Y. 2001) (emphasis added) (quoting N.Y. Penal Law § 110.00). Yet by its very nature acting recklessly is inconsistent with the *mens rea* required for attempt. A person cannot intend to commit a criminally reckless act. He or she either acts recklessly or does not. Addressing the statute at issue in our case, the New York Appellate Division agreed with this sentiment, concluding that the "crime of attempted reckless endangerment is nonexistent since it is a nonintent offense." People v. Trepanier, 84 A.D. 2d 374, 380 (N.Y. App. Div. 1982) (affirming the lower court's decision to dismiss the indictment as to this charge). Further, New York courts have concluded in other contexts that the concept of an attempted recklessness crime is nonsensical. See, e.g., People v. Terry, 104 A.D. 2d 572, 573 (N.Y. App. Div. 1984) (stating "one cannot legally be found guilty of attempted murder in the second degree by reckless conduct").

The only contrary authority in New York is People v. Foster, 19 N.Y.2d 150 (1967). Foster was charged with manslaughter in the first degree and ultimately pled guilty to attempted manslaughter in the second degree. On appeal, Foster argued his conviction had no basis in law and violated due process. The New York Court of Appeals rejected this argument, concluding that Foster knowingly accepted his plea "in satisfaction of an indictment charging a crime carrying a heavier penalty. In such

---

[5] We also reject Knapik's contention that his conviction is distinguishable from manslaughter or assault with a deadly weapon because the reckless endangerment statute does not require injury to an individual. With regard to reckless acts, moral turpitude inheres in the conscious disregard of a substantial and unjustifiable risk of severe harm or death. Knapik's good fortune in not injuring or killing anyone does not change the quality of his actions.

[6] As noted previously, we exercise *de novo* review in resolving this issue.

case, there is no violation of defendant's right to due process." Id. at 153.

Our case, however, is distinguishable from Foster. The concern driving Foster was manipulation of the state criminal process — *i.e.*, a defendant may not induce a plea agreement, receive a reduced sentence and then challenge his or her conviction. See id. at 153-54 ("The defendant declined to risk his chances with a jury. He induced the proceeding of which he now complains. . . . While there may be question whether a plea to attempted manslaughter is technically and logically consistent, such a plea should be sustained on the ground that it was sought by [the] defendant and freely taken as part of a bargain which *was struck for the defendant's benefit*." (emphasis added)). In contrast, Knapik's plea did not decrease the level of the charged offense or subject him to a less severe sentence. He was charged with first degree reckless endangerment and he pled guilty to attempted first degree reckless endangerment. More importantly, we are not reviewing a due process challenge to a state court conviction; we are assessing the immigration implications of that conviction.

As noted previously, the moral turpitude inquiry is categorical. De Leon-Reynoso, 293 F.3d at 635; Rodriguez-Herrera, 52 F.3d at 239-40. Under the categorical approach, we have cautioned against going "beyond the offense as charged and scrutiniz[ing] the underlying facts" of a case to determine whether a crime involves moral turpitude. Valansi v. Ashcroft, 278 F.3d 203, 214 (3d

Cir. 2002) (quoting Drakes v. Zimski, 240 F.3d 246, 248 (3d Cir. 2001)).[7] This means, in the context of our case, that the elements of the underlying offense must necessarily establish that *all* convictions involve moral turpitude. Wilson, 350 F.3d at 381-82. See also Michel, 206 F.3d at 263; Okoroha v. INS, 715 F.2d 380, 382 (8th Cir. 1983).[8] Attempted reckless

---

[7] Valansi, like Wilson (see note 4 and accompanying text), is an aggravated felony, not moral turpitude, case.

[8] In an opinion issued the same day as the opinion in this case, we engaged in an extensive analysis of the categorical approach as applied in aggravated felony cases. See Singh v. Ashcroft, No. 03-1532, __ F.3d __ (3d Cir. Sept. __, 2004). Singh noted that while most prior Third Circuit cases had employed the "formal categorical approach" from Taylor v. United States, 495 U.S. 575, 600 (1990) — which focuses exclusively on the statutory elements of the underlying offense — others deemed it permissible to look beyond the statutory elements of the underlying offense.

In reconciling these cases, Singh delineated two situations in which the formal categorical approach properly may be abandoned. The first is when the terms of the statute on which removal is based invites inquiry into the facts of the underlying conviction. For example, Nugent v. Ashcroft, 367 F.3d 162 (3d Cir. 2004), and Munroe v. Ashcroft, 353 F.3d 225 (3d Cir. 2003), concerned 8 U.S.C.

8

§ 1101(a)(43)(M)(i), which defines an aggravated felony as an offense that "involves fraud or deceit in which the loss to the victim or victims exceeds $10,000." In both cases, however, the relevant criminal statute did not include a "loss greater than $10,000" element. See Nugent, 367 F.3d at 168 n.2 (quoting 18 Pa. Cons. Stat. § 3922(a)); Munroe, 353 F.3d at 226 (citing N.J. Stat. Ann. § 2C:20-4). Nonetheless, both Nugent and Munroe found it proper to examine the amount of loss established. See Nugent, 367 F.3d at 175 (noting the parties had "stipulated that Nugent's state conviction was based on a bad check amounting to only $4,831.26"; Munroe, 252 F.3d at 226 (looking to the indictment and record of conviction).

The second exception to the categorical approach is when the underlying criminal statute is written in the disjunctive (*i.e.*, the statute criminalizes similar but legally distinct conduct) such that some, but not all, convictions under the statute place the alien within the removal category for immigration purposes. Valansi was such a case. 278 F.3d at 214-17 (in entering plea for embezzlement of monies from her employer bank, petitioner avoided admitting that she intended to defraud, thus not qualifying as an aggravated felony for removal purposes). See also Hamdan, 98 F.3d at 187-89 (granting the petition for review and remanding for further examination of the record of conviction because (1) the Louisiana kidnapping statute under which Hamdan was

endangerment is not a crime involving moral turpitude because, categorically speaking, the concept makes no sense. Attempt (necessarily requiring intent to commit a crime) is inconsistent with recklessness (which, by definition, implies acting without intent). Terry, 104 A.D. 2d at 573; Trepanier, 84 A.D. 2d at 380. Put differently, we cannot say that a conviction for attempted reckless endangerment necessarily involves moral turpitude without also abandoning the categorical approach.[9]

convicted is divided into discrete subsections, and (2) it was unclear from the BIA's decision which subsection it believed Hamdan was convicted under and which subsections implicated moral turpitude).

Examination of these cases further supports our position in this case. Both Nugent and Munroe dealt with a provision of the INA, 8 U.S.C. § 1101(a)(43)(M)(i), not relevant to the moral turpitude inquiry. And unlike the statutes at issue in Valansi and Hamdan, New York's reckless endangerment statute is written neither in the disjunctive nor in subsections. Accordingly, the Government has supplied (and we can think of) no principled reason *not* to apply the formal categorical approach.

[9] While the Government does not ask us specifically to abandon the categorical approach in cases such as ours (*i.e.*, when it counsels against deportation), that would be the effect. Under the

9

* * * * *

In this context, we affirm the BIA's decision that New York Penal Law § 120.25, reckless endangerment in the first degree, is a crime involving moral turpitude, but we reverse the BIA's conclusion that Knapik's state conviction for attempted reckless endangerment in the first degree is a crime involving moral turpitude. Therefore, we grant Knapik's petition for review and reverse the BIA's order of removal.

---

categorical approach, courts and the BIA have long declined to consider arguments that, despite the elements of an offense, an alien's individual conduct did not fit within a particular INA-defined deportation category. See, e.g., Alleyne, 879 F.2d at 1185 (citations omitted); Okabe v. INS, 671 F.2d 863, 864-65 (5th Cir. 1982); Matter of C-, 20 I. & N. Dec. at 532 (citations omitted). Now that "the shoe is on the other foot," it would be perverse irony to allow the Government to use the categorical approach in petitioner appeals but to abandon that approach when the Government appeals.