**Mahesh Nenumal TEJWANI, Petitioner**

v.

**ATTORNEY GENERAL OF the UNITED STATES, Respondent.**

**Nos. 07–1828, 07–4132.**

United States Court of Appeals, Third Circuit.

Argued Jan. 6, 2009.

Filed: Oct. 22, 2009.

---

Thomas E. Moseley, Esq., (argued), Newark, NJ, for Petitioner.

Timothy B. Stanton, Esq., (argued), Leah V. Durant, Esq., Susan K. Houser, Esq., Jeffrey L. Menkin, Esq., United States Department of Justice, Office of Immigration Litigation, Washington, DC, for Respondent.

Before: FUENTES and FISHER, Circuit Judges, and PADOVA,* District Judge.

## OPINION OF THE COURT

FUENTES, Circuit Judge:

Mahesh Tejwani, a citizen and native of India, was convicted of money laundering in violation of New York law. As a result, Tejwani was ordered removed as an alien convicted of a crime of moral turpitude within five years of admission. 8 U.S.C. § 1227(a)(2)(A)(i)(I). In affirming this order, the Board of Immigration Appeals ("BIA") held that Tejwani's New York money laundering offense involved deception and the concealment of criminal conduct from the government, thus constituting a crime of moral turpitude. Tejwani petitions for review of this determination and further argues that the BIA erred in

applying new law retroactively in ruling on his appeal.

We defer to the BIA's definition of moral turpitude and its use of the categorical approach, which focuses on the statute and the record of conviction, rather than the specific conduct committed by the alien. However, because we find that deception and the concealment of criminal conduct from the government are not required to prove money laundering under New York law, and because we find that money laundering was not a crime of moral turpitude under the BIA's binding case law at the time of Tejwani's conviction, we will grant the petition for review.

### I.

Tejwani was admitted to the United States as a lawful permanent resident in March 1995. He is married to a United States citizen and has two United States citizen children, now teenagers. On November 30, 2000, Tejwani was convicted of two counts of money laundering in violation of N.Y. Penal Law § 470.10 (1999) ("the money laundering statute").

By pleading guilty, Tejwani admitted to engaging in a financial transaction involving U.S. currency to conceal or disguise the nature, location, source, or ownership of drug proceeds, knowing that the monetary instruments involved were the proceeds of some illegal activity. Tejwani did not admit that he knew that the illegal activity was drug trafficking. (A.R. at 281, 287–88.) He was sentenced to a term of imprisonment.

In October 2001, the Immigration and Naturalization Service served Tejwani with a Notice to Appear charging him with removability pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii) as an alien convicted of

---

* Honorable John R. Padova, Senior District Judge for the United States District Court for the Eastern District of Pennsylvania, sitting by designation.

an aggravated felony. This charge was dismissed and replaced with a charge that Tejwani was removable under 8 U.S.C. § 1227(a)(2)(A)(i)(I) as an alien convicted of a crime of moral turpitude committed within five years of admission.[2] On June 20, 2003, the Immigration Judge ("IJ") found that the offenses were crimes of moral turpitude and ordered Tejwani removed. Tejwani appealed and the BIA affirmed without opinion in September 2004. Tejwani then petitioned this Court for review. Another panel of this Court remanded, holding that whether money laundering constituted a crime of moral turpitude was an issue of first impression which should not have been resolved in a summary order. *Tejwani v. Att'y Gen. of the U.S.*, 159 Fed.Appx. 412, 413 (3d Cir. 2005). Following remand, in a decision issued in February 2007, the BIA once again affirmed the IJ.

Tejwani filed a second petition challenging this determination. Tejwani also filed a motion to reopen, arguing that he should be permitted to apply for cancellation of removal under 8 U.S.C. § 1229b(a)(2) (providing that a lawful permanent resident is eligible for cancellation of removal only after seven years of continuous residence and five years as a lawful permanent resident). Specifically, Tejwani argued that he was eligible for cancellation of removal because more than seven years had passed since he committed his offense. He further argued that proceedings should be terminated to allow him to pursue an application for naturalization. His motion to reopen was denied by the BIA and Tejwani filed a third petition for review. Tejwani's second and third petitions for review have been consolidated.

In its February 2007 decision, the BIA correctly stated that the categorical approach applies to evaluating whether an offense under the money laundering statute constitutes a crime of moral turpitude. *In re Tejwani*, 24 I. & N. Dec. 97, 98 (B.I.A.2007). The BIA reasoned that an act which obstructs the function of a government agency "by deceit, graft, trickery, or dishonest means is a crime involving moral turpitude." *Id.* The BIA also relied on its 2006 case, *In re Robles–Urrea*, 24 I. & N. Dec. 22, 25–26 (B.I.A.2006), for the proposition that "[a]ffirmative acts to conceal criminal activity and impede law enforcement have been found to be crimes involving moral turpitude." *Id.* The BIA further reasoned that money laundering requires proof of intent to conceal rather than mere failure to report, as in financial structuring. *Id.* at 99. Again relying on *Robles–Urrea* for the proposition that concealing criminal conduct is a crime of moral turpitude "regardless of whether the concealed offense is a crime involving moral turpitude," the BIA held that money laundering was categorically a crime of moral turpitude. *Id.*

## II.

We have jurisdiction to review the BIA's orders pursuant to 8 U.S.C. § 1252(a). Our review of legal issues is plenary, subject to *Chevron* deference. *Knapik v. Ashcroft*, 384 F.3d 84, 87 (3d Cir.2004). We afford deference when an agency construes or interprets a statute it administers. *Id.* Thus, "we defer, under *Chevron*, 'to the BIA's definition of moral turpitude,' as well as the BIA's determination that a certain crime involves moral turpitude." *Mehboob v. Att'y Gen. of U.S.*, 549 F.3d 272, 275 (3d Cir.2008) (quoting *Knapik*, 384 F.3d at 88 n. 3).

Analyzing the elements of a state criminal statute does not implicate the BIA's expertise. *Knapik v. Ashcroft*, 384 F.3d

---

**2.** Although Tejwani was not convicted until more than five years after he was admitted, Tejwani does not dispute that the offense was committed within five years of admission.

84, 88 (3d Cir.2004). Accordingly, "[n]o deference ... is given to the BIA's parsing of the elements of the underlying crime." *Mehboob*, 549 F.3d at 275; *see also Partyka v. Att'y Gen. of the U.S.*, 417 F.3d 408, 411 (3d Cir.2005) ("[W]e owe no deference to the IJ's interpretation of a state criminal statute."). We therefore analyze the elements of an underlying crime *de novo. Knapik*, 384 F.3d at 88.

Tejwani argues that the BIA erred in concluding that money laundering, evaluated under the categorical approach, met the definition of moral turpitude used by the BIA. Tejwani also argues that the BIA erred in applying *Robles–Urrea*, a case it decided over six years after Tejwani's offense was complete, rather than the law that existed at the time of Tejwani's guilty plea.

### 1.

In this case the BIA used the following definition of moral turpitude:

> Moral turpitude is conduct that is inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed to other persons, either individually or to society in general. It generally involves conduct that is contrary to justice, honesty, or morality. A crime that impairs and obstructs a function of a department of government by defeating its efficiency or destroying the value of its lawful operations by deceit, graft, trickery, or dishonest means is a crime involving moral turpitude. Affirmative acts to conceal criminal activity and impede law enforcement have been found to be crimes involving moral turpitude. Crimes containing as an element a specific intent to defraud always involve moral turpitude, but we have also determined that certain crimes are inherently fraudulent and involve moral turpitude even though they can be committed without proof of a specific intent to defraud.

As set forth above, we must defer to the BIA's definition of moral turpitude if it is reasonable. For the purposes of this case, we assume that this definition was reasonable.

### 2.

We apply the categorical approach to evaluating whether an offense meets the definition of moral turpitude. *See Jean–Louis v. Attorney General of the United States*, 582 F.3d 462, 482 (3d Cir.2009) (rejecting the Attorney General's modified "realistic probability test" advanced in *Matter of Cristoval Silva–Trevino*, 24 I. & N. Dec. 687, 706–708 (A.G.2008), and affirming the historically applied categorical approach). In so doing, we consider the criminal statute and the record of conviction, not the alien's conduct. *Partyka*, 417 F.3d at 411–12; *Knapik*, 384 F.3d at 88, 90–91; *De Leon–Reynoso v. Ashcroft*, 293 F.3d 633, 635 (3d Cir.2002). Applying the categorical approach, "a crime involves moral turpitude when 'the least culpable conduct necessary to sustain a conviction under the statute' can be considered morally turpitudinous." *Mehboob*, 549 F.3d at 275 (quoting *Partyka*, 417 F.3d at 411). Accordingly, we must determine the least culpable conduct that could result in a conviction under the New York money laundering statute, and compare that conduct to the BIA's definition of moral turpitude.

The relevant portion of the New York money laundering statute provides that:

> A person is guilty of money laundering in the second degree when that person exchanges or receives in exchange, in one or more transactions, one or more monetary instruments which are the proceeds of *specified criminal conduct* and have a total value exceeding ten thousand dollars for one or more other monetary instruments and/or equivalent

property when that person knows that the monetary instrument or instruments exchanged or received in exchange are the proceeds of any criminal conduct and that person:

1.  intentionally makes the exchange to conceal or disguise the nature, the location, the source, the ownership, or the control of such proceeds.

N.Y. Penal Law § 470.10 (1999) (emphasis added).[3] "Specified criminal conduct" includes serious offenses such as homicide and rape, as well as nonturpitudinous conduct such as criminal mischief, usury, contempt, firearms offenses, unauthorized recordings, and antitrust violations. N.Y. Penal Law §§ 470.00, 460.10.

Thus, the essential elements of money laundering are that: (1) the actor knows that the property involved in the financial transaction represents the proceeds of any unlawful activity; (2) the actor "conducts" the financial transaction which in fact involves the proceeds of specified unlawful activity (including most felonies); (3) the perpetrator acts with knowledge that the transaction is designed to conceal or disguise the nature, the location, the source, the ownership or the control of the proceeds; and (4) the total value of the property involved exceeds $10,000. *See* N.Y. Penal Law § Donnino, Practice Commentaries, McKinney's Consol. Laws of N.Y., Book 39, Penal Law art 470 (setting forth elements of equivalent money laundering offense).

These elements do not meet the criteria the BIA relied on in holding that Tejwani's offense met its definition of moral turpitude. The BIA focused on the fact that a money launderer takes "affirmative steps to conceal or disguise the proceeds of criminal conduct[,] acts in an inherently deceptive manner and impairs governmental function, specifically the ability to detect and combat criminal activity." The BIA further stated that "[s]uch interference in governmental function is inherently dishonest and contrary to accepted moral standards." Here, however we have a problem: deception and knowingly or recklessly concealing criminal conduct from the government are neither elements of money laundering nor inherent characteristics of the offense.

Certainly, "classic money laundering"— that is "taking steps to make [criminal] funds appear legitimate" (*Regalado Cuellar v. United States*, 553 U.S. 550, 128 S.Ct. 1994, 2000, 170 L.Ed.2d 942 (2008))— may constitute a deceptive attempt to conceal criminal conduct from the government. However, as set forth below, many money laundering statutes, like the New York statute at issue in this case, reach a far broader range of conduct. Again, under the categorical approach we are concerned only with the least culpable conduct a statute reaches. *Mehboob*, 549 F.3d at 275.

In *Regalado Cuellar*, the Supreme Court considered whether a federal money laundering statute (with language similar

---

**3.** Because the statute is not divisible in any relevant way, we may not apply the modified categorical approach, which would permit the Court to consider certain parts of the underlying record of conviction. *See Evanson v. Att'y Gen. of U.S.*, 550 F.3d 284, 291–92 (3d Cir. 2008) (discussing when various documents may be considered). However, we note that those portions of the underlying record of conviction would not provide any relevant additional information about Tejwani's of-

fense. In particular, the record does not state that Tejwani knowingly laundered the proceeds of a crime of moral turpitude, nor does it state that Tejwani knowingly or recklessly disguised from lawful authorities the illegal character of those proceeds. We also note that contrary to the BIA's analysis the statute has no explicit "deliberate act to conceal illegal activity" requirement. For the reasons that follow in text, we find that this requirement is also not implicit in the statute.

to that at issue here) required proof of "an attempt to create the appearance of legitimate wealth." [4] 128 S.Ct. at 1998. In that case, the Court rejected Regalado Cuellar's argument that concealing or disguising the nature, location, source, ownership, or control of the proceeds of unlawful activity "would necessarily have the effect of making the funds appear legitimate, and, conversely, revealing any such attribute would necessarily reveal the funds as illicit." *Id.* at 2000; *see also id.* at 2001 (reasoning that "revealing those attributes—nature, location, source, ownership, or control—would not necessarily expose the illegitimacy of the funds"). The Court continued by observing that "[i]t might be possible for a defendant to conceal or disguise a listed attribute without also creating the appearance of legitimate wealth." *Id.* For example, knowingly depositing the proceeds of non-turpitudinous conduct into a bank account in exchange for a cashiers check to avoid being mugged disguises the location of those proceeds, but does not create the appearance of legitimate wealth, suggest dishonesty, or necessarily hinder detection of the underlying conduct.

The New York statute—which also prohibits concealing or disguising the nature, location, source, ownership, or control of the proceeds of unlawful activity—similarly does not require proof of an attempt to create the appearance of legitimate wealth. Thus, contrary to the BIA's assumption, the New York statute is broader than classic money laundering and does not require a deliberate act to conceal illegal activity. In short, deliberately concealing the listed characteristics of criminal proceeds does not imply an intent to conceal the underlying criminal activity.

Further, although concealing the listed characteristics of criminal proceeds may unintentionally—but foreseeably—impede a government investigation, intentional or reckless conduct is required to find moral turpitude. *Mehboob,* 549 F.3d at 276 ("[E]vil intent is a requisite element for a crime involving moral turpitude."); *Partyka,* 417 F.3d at 416 (holding that "negligently inflicted bodily injury lacks the inherent baseness or depravity that evinces moral turpitude"); *De Leon–Reynoso,* 293 F.3d at 636 (distinguishing negligent possession of stolen property—not a crime of moral turpitude—from possession of property knowing that it was probably stolen—a crime of moral turpitude); *In re Khourn,* 21 I. & N. Dec. 1041, 1046 (B.I.A.1997) (" '[E]vil intent' is a requisite element for a crime involving moral turpitude."); *In re Flores,* 17 I. & N. Dec. 225, 227 (B.I.A. 1980) ("An evil or malicious intent is said to be the essence of moral turpitude."); *In re Abreu–Semino,* 12 I. & N. Dec. 775, 777 (B.I.A.1968) ("[M]oral turpitude normally inheres in the intent."); *In re P—,* 2 I. & N. Dec. 117, 121 (B.I.A.1944) ("One of the criteria adopted to ascertain whether a particular crime involves moral turpitude is that it be accompanied by a vicious motive or corrupt mind. 'It is in the intent that moral turpitude inheres.' ") (quoting *United States ex rel. Meyer v. Day,* 54 F.2d 336 (2d Cir.1931)); *Michel v. INS,* 206 F.3d 253, 263 (2d Cir.2000) ("[C]orrupt scienter is the touchstone of moral turpitude."). The BIA relied on the fact that the New York statute contained a scienter requirement. However, as set forth above, the scienter requirement is not intended to deceive or hinder lawful authorities.

**4.** "[F]ederal case law to date should guide the interpretation of these [New York] statutes [including the money laundering statutes]." *People v. Rozenberg,* 21 Misc.3d 235, 236, 862

N.Y.S.2d 895, 897 (N.Y.Sup.2008) (applying *Regalado Cuellar* companion case to interpret money laundering statute).

Accordingly, because the New York statute reaches conduct that does not meet the BIA's definition of moral turpitude, the categorical approach compels us to conclude that money laundering is not a crime of moral turpitude under New York law.[5]

### III.

For the foregoing reasons, we will grant Tejwani's petition for review of his order of removal. Accordingly, the issues raised in his petition to review the BIA's refusal to reopen his case are moot and that petition will be denied.

---

[5] Our holding is not inconsistent with *Smalley v. Ashcroft*, 354 F.3d 332, 339 (5th Cir.2003) (holding that knowingly concealing the proceeds of drug trafficking was a crime of moral turpitude). In *Smalley*, the Fifth Circuit relied on the fact that Smalley knew that he was concealing the proceeds of illegal drug transactions, and thus intentionally facilitating the drug trade. *Id.* at 337, 338–39. Further, to the extent that *Smalley* is inconsistent with *Regalado Cuellar*, we find that it is not persuasive.