OPINION OF THE COURT
William A. Wetzel, J.
The Grand Jury of the Special Narcotics Courts of the City of New York voted an indictment against these defendants charging them with four counts of criminal possession of a weapon in the second degree, in violation of Penal Law § 265.03 (2); four counts of criminal possession of a weapon in the third degree in violation of Penal Law § 265.02 (4); and two counts of conspiracy in the fourth degree, in violation of Penal Law § 105.10 (1). In summary, the People allege that a confidential informant (hereinafter Cl) contacted defendant Mercado, offering him an opportunity to rob drug dealers of a valuable supply of narcotics and/or cash. Mercado allegedly accepted the informant’s offer, and engaged the three codefendants to be part of the robbery gang. The case detectives instructed the informant to tell the defendants that the robbery location was 1981 Sedgwick Avenue in the Bronx. On or about October 25, 2004, it is alleged that the informant and the four defendants loaded two vehicles with a number of weapons and went to that Bronx location with the intention to commit a burglary and a robbery.
The defendants filed omnibus discovery motions, to which the People responded. The People also supplied the grand jury minutes to the court for in camera examination pursuant to *707 CPL 210.30 (2). After examining the grand jury minutes, the court ordered the parties to submit additional memoranda of law on two jurisdictional questions. First, in light of the fact that the indictment does not contain a single narcotics-related charge, does the Grand Jury of the Special Narcotics Courts of the City of New York have subject matter jurisdiction? Second, assuming, arguendo, the Special Narcotics Grand Jury has subject matter jurisdiction, does it also have geographic jurisdiction?
To enable the parties to fully brief the issue, this court found that release of certain portions of the grand jury minutes to the parties was necessary to assist the court in making the determination on the motion. (CPL 210.30 [3].) To reprise, the following portions of the grand jury minutes were disclosed:
“question by ado nigel farinha: Just to clarify the jurisdiction issue, Agent Scott, the set up location was in the Bronx; is that correct?
“answer BY CHRIS SCOTT, SPECIAL AGENT WITH THE UNITED STATES DRUG ENFORCEMENT ADMINISTRATION, drug enforcement task force: Correct.
“question: Had the conversations and planning taken place in Manhattan prior to the set up location and arrangements being the Bronx?
“answer: Numerous meetings between the C.I. and target were made. Numerous phone calls from Manhattan were made to the targets and the targets understood that the drug location they’re potentially going to rob was in Manhattan originally.
“question: And you said communication; between whom and whom?
“answer: C.I. and Pedro Mercado.” (Grand jury minutes, at 20, lines 9-22; at 21, lines 1-3.)
The Cl testified in the grand jury. In summary, the informant testified that he had continuous conversations with Pedro Mercado; however, his testimony is devoid of any references to where he or defendant Mercado were located when they had those telephone conversations. (See generally, grand jury minutes, at 60, lines 14-22; at 61, lines 1-22; at 63, lines 17-19.) Furthermore, it is apparent from the grand jury minutes that none of the face-to-face meetings between the informant and the defendants occurred in Manhattan. The sole reference to Manhattan in' the informant’s testimony is contained in the informant’s recitation of why he was at a certain place at a *708 certain time, to which the witness responded: “[I]t was an operation that had been assigned to me with those four people [the defendants] that the foreman of the jury mentioned which consisted of going to an apartment in Manhattan or in the Bronx with firearms, with guns, and it was to rob sixty kilos of cocaine.” (Grand jury minutes, at 59, lines 16-21.)
The parties submitted legal memoranda to the court on the jurisdiction question. For the reasons which follow, this court finds that the evidence before the grand jury was insufficient to establish jurisdiction under any theory, and therefore the indictment is dismissed with leave to re-present.
The general rule in New York is that, for the State to have criminal jurisdiction, either the alleged conduct or some consequence of it must have occurred within the state. Because the State only has power to enact and enforce criminal laws within its territorial borders, there can be no criminal offense unless it has territorial jurisdiction. (People v McLaughlin, 80 NY2d 466, 471 [1992].) “[M]ere thoughts or plans” do not meet the “conduct” requirement of Criminal Procedure Law § 20.20. (People v Kassebaum, 95 NY2d 611, 619 [2001], cert denied 532 US 1069 [2001].)
Territorial jurisdiction refers to the power of the court to hear and determine the case, and is distinguished from venue, which pertains to the proper county or place of trial; thus, “territorial jurisdiction . . . goes to the very essence of the State’s power to prosecute and . . . may never be waived” (People v McLaughlin, 80 NY2d at 471 [citations omitted]). The prosecu7 tian must prove territorial jurisdiction beyond a reasonable doubt. (Id. at 471-472.)
A defendant has the right under article I, § 2 of the New York State Constitution to be prosecuted in the county where the alleged criminal conduct was committed, unless the Legislature vests jurisdiction in some other county. (People v Ribowsky, 77 NY2d 284, 291 [1991]; People v Moore, 46 NY2d 1, 6 [1978].) The right to trial by jury in article I, § 2 incorporates the common law as it stood at the time of independence, and includes the right to be tried by a jury of the “vicinage,” the county where the alleged criminal conduct was committed. (Mack v People, 82 NY 235 [1880]; Matter of Murphy v Extraordinary Special & Trial Term of Supreme Ct., 294 NY 440, 448 [1945].)
The guarantee to a defendant of the right to trial by a jury of the vicinage is historically regarded as “vital”; the limitation of the right was one of the grievances that led to the American *709 Revolution.[1] (People v Goldswer, 39 NY2d 656, 661-662 [1976]; People v R., 160 Misc 2d 142, 144-146 [Sup Ct, Kings County 1994].) This court has long recognized that this right is “not to be lightly disregarded and that only the most compelling reason could justify trial by a jury not drawn from the vicinage.” (Matter of Murphy v Supreme Ct., 294 NY at 457.)
Because of the importance of this right, New York courts have given the jurisdictional exceptions in Criminal Procedure Law article 20 “a restrictive interpretation and operation.” (Bellacosa, Practice Commentaries, McKinney’s Cons Laws of NY, Book 11 A, CPL 20.40 [1981].) Trial may be held outside the vicinage only if the Legislature has authorized it in “clear and unmistakable terms.” (Matter of Murphy v Supreme Ct., 294 NY at 447, quoting People v Farini, 239 NY 411, 414 [1925].) Such exceptions to the normal jurisdictional rules are to be applied only in accordance with necessity. (People v Fea, 47 NY2d 70, 75 [1979].)
In the early 1970s, the Legislature enacted an exception to the normal jurisdictional rules by creating the Special Narcotics Courts and the Special Narcotics Grand Jury. Motivated by the “crisis, which transcends the traditional jurisdictional boundaries of the counties [comprising the City of New York],” and by the “ineffectiveness of official efforts to contain narcotics traffic . . . due in significant part to the inability of the overburdened criminal justice system to cope with the enormous volume of narcotics cases” (Judiciary Law § 177-a), the Legislature enacted Judiciary Law § 177-d (iii):
“[U]pan the application of the assistant district attorney in charge of the special narcotics parts appointed pursuant to the plan authorized by [§ 170-7-c], one or more grand juries may be drawn and impaneled for a special narcotics part upon the order of the justice assigned to such part, which grand jury may exercise all the powers of a grand jury in *710 the county in which it is impaneled and may in addition exercise its powers with respect to the alleged commission of an offense in any county wholly contained in a city having a population of one million or more involving the sale or possession of a narcotic drug and any other offense that could be properly joined therewith in an indictment.” (Judiciary Law § 177-d [iii].)
In other words, a Special Narcotics Grand Jury in New York County may exercise all the powers of a regular New York County Grand Jury. This means that the Special Narcotics Grand Jury, as any grand jury impaneled in New York County, must have geographic jurisdiction over the acts which they are seeking to indict. The Special Narcotics Grand Jury enjoys its expanded citywide jurisdiction as set forth in Judiciary Law § 177-d (iii) only as to those offenses involving the “sale or possession of a narcotic drug and any other offense that could be properly joined therewith in an indictment.” (See People v Taylor, 39 NY2d 649, 653 [1976] [holding that the effect of this legislation was “to combine the five counties of New York City into a single unit for purposes of prosecuting narcotics indictments”] [emphasis added].)
The People’s sole theory of geographic jurisdiction was explicitly presented to the grand jury. In fact, the Assistant District Attorney who presented the case to the grand jury prefaced his question to Agent Chris Scott with the comment: “Just to clarify the jurisdiction issue, Agent Scott” (grand jury minutes, at 20, lines 9-22; at 21, lines 1-3). The entire substance of Agent Scott’s testimony before the grand jury on the issue of jurisdiction has previously been set forth in this decision (supra at 707). The People concede that there is no other testimony on the point, although they argue extensively about the “reasonable inferences” they believe can be drawn from the sparse comments relating to jurisdiction.
In summary, it is uncontested that the sole references to Manhattan in the grand jury minutes, and the asserted basis of the grand jury’s New York County jurisdiction, are the “numerous phone calls from Manhattan made to the targets” and that “the targets understood that the drug location they are potentially going to rob was in Manhattan originally.” (Id.) The Cl’s testimony is bereft of any references to any phone calls being made from Manhattan, but he does make a cursory reference to the plan which originally “consisted of going to an apart *711 ment in Manhattan or in the Bronx with firearms, with guns, and it was to rob sixty kilos of cocaine.” (Grand jury minutes, at 59, lines 16-21.) The threshold question, therefore, is whether this evidence met the minimal standard required to establish geographic jurisdiction in any New York County Grand Jury, irrespective of whether it happens to be designated a Special Narcotics Grand Jury.
Where a defendant challenges geographic jurisdiction before trial, the jurisdiction of the county seeking to prosecute must have been established before the grand jury. (Matter of Steingut v Gold, 42 NY2d 311, 316-317 [1977]; People v Kellerman, 102 AD2d 629 [3d Dept 1984].) The indictment at issue here does not contain a single count charging sale or possession of narcotics; therefore, the expanded jurisdictional rule of Judiciary Law § 177-d (iii) does not apply. (People v Shukla, 82 Misc 2d 912 [Sup Ct, NY County 1975] [expanded jurisdictional authority of Judiciary Law § 177-d does not apply to a New York County Special Narcotics Grand Jury charging a nonnarcotic crime occurring outside of New York County].) The court therefore begins with the sole basis of jurisdiction asserted in the grand jury, the alleged “numerous phone calls from Manhattan” which purportedly confer jurisdiction on New York County pursuant to CPL 20.40 (1) (b) and 20.60 (1).
As to the conspiracy counts, special jurisdictional rules apply: geographic jurisdiction as to the conspiracy counts is established in the county in which the defendant entered into the conspiracy and in any county in which one or more of the overt acts in furtherance of the conspiracy were committed by the defendant or one of the coconspirators. (People v Ribowsky, 77 NY2d 284 [1991]; CPL 20.40 [1] [b].) CPL 20.60 (1) provides that “[a]n oral or written statement made by a person in one jurisdiction to a person in another jurisdiction by means of a telecommunication ... is deemed to be made in each jurisdiction.”
However, before this court can reach the question of whether CPL 20.40 (1) (b) and 20.60 (1) properly apply in this case, it must first determine whether there is competent evidence of (1) phone calls actually made in New York County, and (2) if made, whether those phone calls were made in furtherance of the conspiracy. That analysis is guided by the familiar rules governing the motion to dismiss an indictment for legal insufficiency.
In determining a motion to dismiss an indictment for legal insufficiency, the reviewing court must consider whether the evidence, viewed most favorably to the People, if unexplained and *712 uncontradicted would be sufficient to warrant conviction by a trial jury. (People v Manini, 79 NY2d 561, 568 [1992].) Legally sufficient evidence is defined as “competent evidence which, if accepted as true, would establish every element of an offense charged.” (CPL 70.10 [1].) Hearsay evidence does not constitute competent evidence. (People v Swamp, 84 NY2d 725, 730 [1995].) Pursuant to CPL 190.30 (1), the same rules which govern admission of evidence at criminal trials apply to grand jury proceedings, unless covered by an exception listed in CPL 190.30 (2). While geographical jurisdiction is a question of fact and can be reasonably inferred from all the facts and circumstances (see Machado v Donalty, 107 AD2d 1079 [4th Dept 1985]), the evidence which is presented to the grand jury on geographical jurisdiction must be competent evidence; if the evidence is not competent, no inferences, however reasonable, can rescue the presentation.
This court finds that the scant evidence adduced before this grand jury was insufficient to establish geographic jurisdiction in any New York County Grand Jury. Special Agent Chris Scott’s testimony regarding the “numerous phone calls made” to the targets was unacceptable hearsay evidence. This testimony, which the People generously characterize as of a “general nature,” was utterly devoid of any nonhearsay facts establishing that either party to any conversation was actually present in Manhattan, or that the subject matter of the phone calls was in furtherance of a criminal conspiracy, both essential requirements of CPL 20.40 (1) (b). There was no testimony that the agent was a party to the conversation, that he was listening to the conversations on another line or on a wiretap, or even that he was with the Cl or one of the targets at the time they were having the conversation so that he could overhear some of the content. Therefore, his testimony about these phone calls, to the extent that it is credible and in the light viewed most favorably to the People, perforce was based upon someone else’s explanation to him of what took place. It is therefore unacceptable hearsay. (People v Swamp, supra.)
The Cl’s testimony before the grand jury on this issue, which could have been dispositive if elicited, is even less helpful. The Cl’s testimony is devoid of any references as to where he or defendant Mercado were located when the telephone conversations allegedly took place. (See generally, grand jury minutes, at 60, lines 14-22; at 61, lines 1-22; at 63, lines 17-19.) Despite the People’s urging that this court engage in impermissible specula *713 tian about the whereabouts of these parties, it is also apparent from the grand jury minutes that none of the face-to-face meetings between the informant and defendants occurred in Manhattan. The People assert that:
“[E]yen though the cooperating witness never explicitly testified that he was in Manhattan during any particular conversation, one could infer from the fact that the witness and Mercardo were speaking on cell phones in and around Manhattan and the Bronx, and from the general ease with which one can travel between the two boroughs, that at least some of the conversations took place in Manhattan.”
Frankly, this court is flabbergasted that the People consider these proposed inferences “reasonable.” This evidence provides no more reasonable basis for speculating that these individuals were moving between Manhattan and the Bronx than it provides a reasonable basis to assume that they were both in the same borough, one was in another state, one was in Staten Island, or one was in Queens. There is simply no reasonable basis, aside from wishful thinking, for those assertions. In sum, the evidence presented to the grand jury of these phone calls was wholly incompetent to establish New York County jurisdiction under any theory.
Even assuming, arguendo, that competent evidence had been presented to the grand jury, the facts of this case would impermissibly stretch the acceptable limits of CPL 20.60 (1). Criminal Procedure Law § 20.60 (1) should in fact be given a narrow application. (People v R., 160 Misc 2d 142 [Sup Ct, Kings County 1994].) In People v R., the prosecution relied on CPL 20.60 (1) to establish jurisdiction in Kings County over an insurance fraud and related crimes. The defendant created the fraudulent bills in his Manhattan office and submitted them to the insurer’s office in Nassau County. (Id. at 143-144.) The Kings County District Attorney sought jurisdiction based on a single phone call made by an informant at the behest of the Kings County District Attorney from a telephone at the Kings County District Attorney’s Office to the defendant’s office in Manhattan. People v R. held that a contextual analysis of section 20.60 (1) compelled rejection of this jurisdictional claim:
“Section 20.60 must be read in the context of article 20; section 20.60 begins, Tor purposes of this article.’ Therefore, section 20.60 must be read in connection with section 20.40, which governs venue *714 in counties. The application of section 20.60 (1) to a case like this would be out of line with section 20.40. Each provision of section 20.40 either (1) requires a specific factual attachment of significance to the county of prosecution, such as an element of the crime, a conspiracy to commit the crime, or a particular effect in that county and the defendant’s intent or expectation that a particular effect result in that county; or (2) as Fea, Moore and Cullen (supra) held, the provision applies ‘of necessity’ when the location of the defendant’s criminal conduct cannot be determined. Section 20.60 (1), combined with section 20.40, insures that if the requirements of venue are otherwise satisfied by a sufficient criminal connection or effect in the county of prosecution, the transmittal of a criminal statement, such as a fraudulent insurance claim, by mail from one county to another, or the occurrence of a criminal conversation on the telephone between conspirators in two counties, results in venue in either county.” (Id. at 147-148.)
The court in People v R. succinctly summarized its holding (at 144-145):
“The flaw in the People’s mechanical application of CPL 20.60 (1) is that it ignores the constitutional background of CPL article 20, and the context of section 20.60 (1) in article 20. Viewed in those contexts, section 20.60 (1) does not apply to the telephone conversation [upon which the People based their jurisdictional argument]. The reason is that there was no actual criminal conduct or intent in Kings County, no effect in Kings County of the defendant’s conduct in Manhattan, no intent to have an effect in Kings County . . . All acts by the defendant were performed in counties other than Kings, and every result of his conduct was outside Kings County. On such facts, there is no venue in Kings County, notwithstanding the language of section 20.60 (1).” (Emphasis supplied.)
Substitute “New York” for “Kings” and “Bronx” for “Manhattan” in the preceding paragraph, and it is an apt summary of the case at bar.
The court now turns to the People’s second theory, that the grand jury had jurisdiction based on the fact that the defendants were led to believe that the robbery would take place either in *715 the Bronx or in Manhattan. This theory is equally unavailing. “[M]ere thoughts or plans” do not meet the “conduct” requirement of CPL 20.20. (People v Kassebaum, 95 NY2d 611, 619 [2001], cert denied 532 US 1069 [2001].) Consider the ramifications of a jurisdictional scheme which confers jurisdiction on any contemplated location of a crime. Under such a scheme, if one could prove that at some point a defendant had discussed robbing a bank in Kansas, yet ultimately robbed a bank in Utah, the mere discussion of the Kansas bank as a potential robbery target would give Kansas jurisdiction to prosecute the Utah bank robbery. Merely to state this premise is to refute it.[2]
Finally, the People assert an alternative theoiy of jurisdiction for the first time in their supplemental brief. They argue that New York County has “particular effect” jurisdiction pursuant to CPL 20.40 (2) (c). This theory of jurisdiction, which is variously called “particular effect” jurisdiction, “injured forum” jurisdiction, or “protective” jurisdiction, permits a criminal court in a particular county to exercise jurisdiction over an offense when—even though none of the conduct constituting the offense occurred within that county—“[s]uch conduct had, or was likely to have, a particular effect upon such county or a political subdivision or part thereof, and was performed with intent that it would, or with knowledge that it was likely to, have such particular effect therein.” (CPL 20.40 [2] [c].) Conduct constituting an offense has a “particular effect” upon a county when it “produces consequences which, though not necessarily amounting to a result or element of such offense, have a materially harmful impact upon the governmental processes or community welfare of a particular jurisdiction, or result in the defrauding of persons in such jurisdiction.” (CPL 20.10 [4].)
The requirement that the conduct have a materially harmful impact can only be satisfied by “a concrete and identifiable injury” to either the county’s governmental processes (executive, legislative or judicial branch of government), or the welfare of the county’s community. (See Steingut, 42 NY2d at 318, supra.) To be materially harmful, the impact must be more than minor or incidental, and the conduct must harm “the well *716 being of the community as a whole,” not merely a particular individual. (People v Fea, 47 NY2d 70, 77 [1979].) In addition, because the jurisdiction of the county seeking to prosecute must be established before the grand jury, the type of injury or offense contemplated by the particular effect statute must be “perceptible and of the character and type which can be demonstrated by proof before a Grand Jury.” (Steingut, supra at 317.) Finally, because particular effect jurisdiction is to be applied only in “limited circumstances” (see Fea, supra at 76), it has been rarely invoked.
The People contend that the requirements of “particular effect” jurisdiction are satisfied in this case because
“the formulation of a concrete plan to carry out an armed robbery of a residential location within Manhattan is a harm that would affect the community as a whole, is distinct to the heavily drug-infested areas of Manhattan, since the robbers targeted a narcotics stash location, and is a concrete harm. Specifically, a group of heavily armed individuals forcibly entering a residential building in a crowded section of Manhattan with the intent and willingness to use the weapons they are carrying would obviously create a grave risk of harm not just to the residents of the targeted apartment but to all other occupants of the building as well as any individuals they encountered while enroute into or out of the building. The formulation of the plan by the defendants was carried out with the intent that such a risk of harm take place in Manhattan and as such, would fall within the realm of GPL § 20.40(2)(c) providing a second means of establishing jurisdiction.” (People’s brief at 12.)
Because “particular effect” jurisdiction is seldom invoked and rarely used, the Court of Appeals has developed very specific rules regarding its use. If a district attorney seeks to base jurisdiction for an indictment upon this theory, the prosecutor must specifically inform and instruct the grand jury on the requirements of the statute, must present evidence to the grand jury of the concrete and identifiable injury which it is alleged the county has suffered, and the indictment itself must specify the theory of jurisdiction and the specific effect, and the concrete and identifiable injury, which the defendant is being charged with presenting to the county. (See, e.g., Steingut, 42 NY2d 317-319.)
*717 The Court of Appeals most recently analyzed the specific scope and application of “particular effect” jurisdiction in Matter of Taub v Altman (3 NY3d 30 [2004]). In Taub, the Court of Appeals rejected an attempt by the New York County District Attorney to apply “particular effect” jurisdiction to confer jurisdiction in New York County over the filing of false tax returns where there was no evidence that the tax returns were either mailed from or received in Manhattan, or that defendants committed any other act in Manhattan establishing an element of the relevant offenses. (Id. at 32-33.) Although noting that there was “no dispute that defendant’s conduct, if true, had a materially harmful impact on the governmental processes or community welfare of New York City as a whole” (id. at 34), this court rejected New York County’s attempt to exercise jurisdiction, stating:
“Permitting New York County to exercise particular effect jurisdiction over an alleged underreporting of income on tax returns based solely on the ‘processing’ of New York City tax revenues in Manhattan would effectively grant the New York County District Attorney jurisdiction throughout New York City to prosecute any income tax or other offense that arguably affects city revenue or expenditures. Such jurisdiction would include prosecution of a Bronx toll taker who embezzles funds, or of a person who steals from a city agency in Kings County or vandalizes city property in Queens or Richmond.
“Moreover, under the People’s theory, the Albany County District Attorney could prosecute any similar crime against the State, no matter where it occurred, including, for example, a Buffalo resident who steals from the till at a local Department of Motor Vehicles office or a driver who evades a toll on Long Island. These scenarios would constitute a vast expansion of the ‘limited circumstances’ in which protective jurisdiction is to be applied.” (Id. at 35-36 [citations omitted].)
In rejecting the prosecution’s argument for such broad jurisdiction in Taub, the Court noted that the statutory definition of “particular effect” was added to the original bill after
“District Attorneys complained that the proposed statute gave all counties jurisdiction of all crimes and they gave, as an example, that under it any robbery or burglary of a bank in one county would *718 cause an effect on depositors in many counties and the crime would be committed with intent and knowledge that it would have such effect.” (Id. at 37, quoting Matter of Steingut v Gold, 54 AD2d 481, 487 [2d Dept 1976], affd 42 NY2d 311 [1977].)
The Court of Appeals in Taub observed that although it was “beyond dispute that defendant’s alleged conduct materially harmed the government of New York City[,] . . . [t]he evidence proferred here is insufficient to establish that the harm suffered by the City was in any meaningful way peculiar to New York County.” (Taub at 38.) Here, the facts do not even rise to the threshold level of Taub because no harmful conduct whatsoever occurred in New York County. The plan to rob drug dealers in Manhattan was wholly inchoate—the case agents, the Cl, the defendants, and the guns actually ended up in the Bronx. The vivid scenario of harm to the New York County community laid out by the People in their brief is wholly speculative, far from the actual conduct which the Court of Appeals in Taub conceded “materially harmed the government of New York City.” (Id. at 37.) Again, jurisdiction is not established by thoughts, it is established by conduct. (See CPL 20.20; People v Kassebaum, 95 NY2d 611, 619 [2001], cert denied 532 US 1069 [2001].)
Even if one were to assume, arguendo, that the conduct hypothesized by the People had actually occurred in New York County, it would not be the kind of harm “peculiar to New York County” which would give rise to “particular effect” jurisdiction. The harm described by the People is the sadly generic sort of harm which is incident to any robbery of this type. This court knows that every county in New York (and unfortunately, counties in many other parts of the state and country) suffers from “drug infested areas,” and therefore runs the risk of this kind of robbery. Sadly, there is nothing unique or peculiarly harmful to New York County about innocent bystanders suffering from the deadly fall out of armed robbers intent on their mission.
Finally, this theory of jurisdiction is unavailable to the People because it must be specifically proved before the grand jury, the grand jury instructed on it, and the theory pleaded in the indictment. (Steingut, supra at 318.) Since this theory of jurisdiction made its first appearance in the People’s supplemental brief, it was neither proved before the grand jury nor specifically pleaded in the indictment.
The final remaining jurisdictional question is simply this: is there any basis for the Special Narcotics Grand Jury to assert *719 jurisdiction over the conduct exclusively occurring in Bronx County? The only basis of such jurisdiction would be the expanded jurisdiction granted by Judiciary Law § 177-d (iii), that is, “an offense . . . involving the sale or possession of a narcotic drug and any other offense that could be properly joined therewith in an indictment.” This court finds no basis whatsoever for New York County to assert jurisdiction over conduct which took place in the Bronx.
Clearly, none of the charges, which relate to burglary, robbery, and weapons possession, involve the “sale or possession of a narcotic drug.” The People argue extensively that the statute must be read expansively, and urge this court to find that because the defendants intended to rob narcotics dealers, their conduct falls within the ambit of the statute. This court, however, cannot endorse that theory. Such an interpretation would lead to a reductio ad absurdum: if a defendant robs a securities broker, are the securities laws violated? The occupation of the intended victim cannot confer jurisdiction where it does not otherwise exist.
The legislation which led to the creation of the Special Narcotics Courts, and the special jurisdictional rules governing those courts, was motivated by the 1970s crisis in narcotics cases and the way that the numbers of those cases were overwhelming the criminal justice system. This case, which is at bottom a robbery case, is tangentially related to those concerns. Narcotics dealers, like banks, are assumed to have large sums of cash. Robbers victimize sources of large amounts of cash. Jurisdiction cannot rest on such peripheral facts as the occupation of the victim.
In view of the foregoing, the indictment is dismissed with leave to re-present to a New York County Grand Jury, to the extent that the People can establish jurisdiction, or, alternatively, for re-presentation before a Bronx County Grand Jury.

. This is evidenced by the Declaration of Independence (para 21 [1776]), which decried the British practice of “transporting us beyond Seas to be tried for pretended offenses.” (See United States v Cabrales, 524 US 1, 6 n 1 [1998]; People v Goldswer, 39 NY2d 656, 661-662 [1976].) It was as a reaction to this practice that article III (§ 2 [3]) of the United States Constitution was enacted, requiring that, in criminal cases, the “[t]rial of all Crimes . . . shall be held in the State where the said Crimes shall have been committed.” (Cabrales, 524 US at 6; Goldswer, 39 NY2d at 662.) An additional guarantee of this right is contained in the Sixth Amendment to the United States Constitution, which calls for trial “by an impartial jury of the State and district where the crime shall have been committed.” (Cabrales, 524 US at 6.)

. The People also attempt to use this potential for Manhattan to be a robbery site to buttress their argument that one could reasonably infer that one of the parties was in Manhattan when the phone calls were made. This assertion is equally without foundation in the competent evidence and is wholly speculative.