

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-22-2005

# Tejwani v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-3930

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Tejwani v. Atty Gen USA" (2005). *2005 Decisions.* Paper 59.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/59

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 04-3930

———————

MAHESH NENUMAL TEJWANI,
                                        Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                        Respondent

———————

Petition for Review of an Order of the
United States Department of Justice
Board of Immigration Appeals
(BIA No. A44-741-386)

———————

Argued December 5, 2005

Before:  RENDELL, FISHER and VAN ANTWERPEN, <u>Circuit</u> <u>Judges</u>.

(Filed: December 22, 2005)

———————

Thomas E. Moseley    [ARGUED]
One Gateway Center
Suite 2600
Newark, NJ  07102
    *Counsel for Petitioner*

Christopher C. Fuller
Thankful T. Vanderstar    [ARGUED]
U.S. Department of Justice

Office of Immigration Litigation
P.O. Box 878
Ben Franklin Station
Washington, DC  20044
    *Counsel for Respondent*

---

OPINION OF THE COURT

---

RENDELL, <u>Circuit Judge</u>.

Mahesh Nenumal Tejwani petitions for review of the September 13, 2004 decision of the Board of Immigration Appeals ("BIA") summarily affirming the Immigration Judge ("IJ")'s June 20, 2003 removal order.  That order followed the IJ's determination, in a series of opinions, that New York Penal Law section 470.10(1) was a "crime involving moral turpitude," and that Tejwani's 2000 conviction for violating that provision rendered him deportable pursuant to 8 U.S.C. § 1227(a)(2)(A)(i).

We have jurisdiction under 8 U.S.C. § 1252(a)(1) and, for the reasons that follow, will grant the petition for review.

**I.**

We will limit our factual discussion to those events relevant to our analysis. Tejwani is a native and citizen of India who was admitted to the United States as a lawful permanent resident in 1995.  On November 30, 2000, Tejwani pleaded guilty to two counts of money laundering in the second degree, N.Y. Penal § 470.10(1), in New York Supreme Court.  The statute as it was then written required proof that the actor knew that

2

he was laundering the proceeds of "any criminal conduct."[1]

The Immigration and Naturalization Service ("INS") served Tejwani with a Notice to Appear on October 5, 2001, charging that he was removable for conviction of an aggravated felony under 8 U.S.C. § 1227(a)(2)(A)(iii). When that charge was dismissed, the INS charged Tejwani with removability for conviction of a crime involving moral turpitude within five years of the date of admission to the United States. 8 U.S.C. § 1227(a)(2)(A)(i).

Tejwani applied to terminate removal proceedings. The IJ assigned to Tejwani's case issued three interlocutory orders concerning Tejwani's deportability. Each time, she concluded that Tejwani was deportable, albeit for slightly different reasons. In the first order, the IJ relied on language in the indictment that described acts to which Tejwani had not pleaded guilty. *March 17, 2003 IJ Decision* at *1. Tejwani moved to reconsider

---

[1]The statute provided, in relevant part:

> A person is guilty of money laundering in the second degree when that person exchanges or receives in exchange, in one or more transactions, one or more monetary instruments which are the proceeds of specified criminal conduct and have a total value exceeding ten thousand dollars for one or more other monetary instruments and/or equivalent property when that person knows that the monetary instrument or instruments exchanged or received in exchange are the proceeds of any criminal conduct and that person:
>
> 1.    intentionally makes the exchange to conceal or disguise the nature, the location, the source, the ownership, or the control of such proceeds . . . .

N.Y. Penal Law § 470.10 (McKinney 2000).

and, in a second order, dated March 17, 2003, the IJ acknowledged her earlier mistake. *Id.* at *2. Nevertheless, the IJ sustained the charge of deportability on the grounds that N.Y. Penal Law § 470.10(1) qualified as a crime involving moral turpitude. *Id.* at *5. The IJ determined, based on the indictment, that the "criminal conduct" underlying Tejwani's money laundering conviction was drug trafficking, and reasoned that, because drug trafficking is a crime involving moral turpitude, Tejwani's crime similarly involved moral turpitude. *Id.* at *6-7.

Tejwani again moved for reconsideration. On May 30, 2003, the IJ issued a third order, which incorporated the rationale of the March 17 order and further sustained the charge against Tejwani on the grounds that money laundering itself, regardless of the underlying criminal conduct, qualifies as a crime of moral turpitude. *See May 30, 2003 IJ Decision*, at *6-7.[2] The IJ issued her final decision, ordering Tejwani's removal to India, on June 20, 2003. The BIA subsequently affirmed the IJ's decision without opinion pursuant to 8 C.F.R. § 1003.1(e)(4).

## II.

---

[2] We note that the IJ's statement in this opinion that the underlying drug trafficking "cannot be ignored," *May 30, 2003 IJ Decision* at *6, contradicts her seeming recognition that such conduct should not have been taken into account. It is also at least potentially at odds with our case law requiring IJs and the BIA to analyze whether a crime is a crime involving moral turpitude under the "categorical approach," *see De Leon-Reynoso v. Ashcroft*, 293 F.3d 633, 635 (3d Cir. 2002), unless one of the two exceptions to that approach applies. *See Knapik v. Ashcroft*, 384 F.3d 84, 92 n.8 (3d Cir. 2004).

4

Tejwani claims that the BIA abused its discretion in summarily affirming the IJ's decision. We agree. The BIA is entitled to streamline its case load, but it must do so in accordance with the applicable regulations. Accordingly, we may grant a petition for review where we conclude that the BIA's decision to streamline a case was "arbitrary and capricious." *Smriko v. Ashcroft*, 387 F.3d 279, 296 (3d Cir. 2004).

Before a case can be properly streamlined, the reviewing BIA member must determine that either (A) the issues on appeal are squarely controlled by existing BIA or federal court precedent or (B) the issues raised on appeal are not so substantial that the case warrants the issuance of a written opinion. 8 C.F.R. § 1003.1(e)(4)(i). Neither condition was met here. The issue in this case was one of first impression. Over the course of her three interlocutory orders, the IJ made the need for guidance abundantly clear, *see May 30 Decision* at *2 ("[T]here really is no case precedent on this issue of whether money laundering is a crime involving moral turpitude."); *id.* at *5 ("[Q]uite honestly, there is simply no case law that interprets whether money laundering is a crime involving moral turpitude that this court has been able to locate.").[3] Moreover, the question presented here – whether money laundering involves moral turpitude – is a legal issue substantial enough to warrant the issuance of a written opinion by a panel of the BIA.

---

[3]Since the IJ's decision, the Fifth Circuit Court of Appeals has opined that money laundering to conceal drug proceeds does constitute a crime involving moral turpitude. *Smalley v. Ashcroft*, 354 F.3d 332, 339 (5th Cir. 2003).

We therefore conclude that the BIA's decision to affirm the IJ's decision on this matter of first impression without issuing an opinion was arbitrary and capricious in light of the requirements of 8 C.F.R. § 1003.1(e)(4).

**III.**

As we have noted, "arbitrary and capricious application of the streamlining regulations can result in building case law that is fashioned without the benefit of agency expertise." *Smriko*, 387 F.3d at 297. This is particularly so where, with respect to an issue such as this, we would owe the BIA's reasoned determination *Chevron* deference. *See Knapik v. Ashcroft*, 384 F.3d 84, 87-88 (3d Cir. 2004) (adopting the majority view that courts owe *Chevron* deference "not only to the BIA's definition of moral turpitude but also to its determination that the elements of a criminal statute satisfy that definition"). "Rather than usurping the role of the BIA and establishing a precedent that the Board's expertise might counsel against," *Smriko*, 387 F.3d at 297, we will grant Tejwani's petition for review, vacate the BIA's decision, and remand for further proceedings in order that the BIA may determine, in the first instance, whether money laundering, as it is defined in the New York statute under which Tejwani was convicted, is a "crime involving moral turpitude."