**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-3308
_____

JOSÉ BELAMINO MARADIAGA,
                                        Petitioner
v.

ATTORNEY GENERAL OF THE UNITED STATES OF AMERICA,
                                        Respondent
_____

On Petition for Review of a Decision of the Board of Immigration Appeals
(A089-241-148)
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
June 24, 2016
_____

Before:  MCKEE, *Chief Judge*,[*] FISHER, and GREENAWAY, JR., *Circuit Judges*.

(Opinion Filed: January 24, 2017)
_____

OPINION[**]
_____

GREENAWAY, JR., *Circuit Judge*:

_____

[*] Judge Theodore McKee concluded his term as Chief of the United States Court of Appeals for the Third Circuit on September 30, 2016.  Judge Brooks Smith became Chief Judge on October 1, 2016.
[**] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Petitioner José Belamino Maradiaga ("Maradiaga") petitions for review of the Board of Immigration Appeals' ("BIA") decision that he is ineligible for cancellation of removal. We conclude that Maradiaga's prior state-court conviction was for a crime involving moral turpitude, and that under 18 U.S.C. § 1229b(b)(1) he is ineligible for cancellation of removal. We will therefore deny his petition.

## I. Background

Maradiaga, a native and citizen of Honduras, entered the United States in March 1999 as a nonimmigrant. In September 2002, he pled guilty to misdemeanor third-degree assault, pursuant to New York Penal Law § 120.00(1). Maradiaga received three years of probation.

In October 2009, the Department of Homeland Security initiated removal proceedings against Maradiaga, charging him with removability as a nonimmigrant present in the United States beyond a temporary authorized period. In June 2013, Maradiaga appeared before an immigration judge ("IJ") and conceded removability. The IJ denied Maradiaga's request for cancellation of removal, concluding that Maradiaga's New York conviction was for a crime involving moral turpitude. The BIA remanded the matter to determine whether the charge of removal was appropriate.

On remand, DHS asserted a substitute charge of removal, charging Maradiaga removable as a noncitizen present in the United States without being admitted or paroled. Maradiaga conceded the substitute charge of removal. The IJ again denied Maradiaga's

2

request for cancellation of removal on the basis of his New York conviction.

Maradiaga filed an appeal, which the BIA dismissed. Maradiaga then filed a timely petition for review.

## II. Jurisdiction and Standard of Review

We have jurisdiction to review questions of law in petitions for review from the BIA. 8 U.S.C. § 1252(a)(2)(D). We "review the administrative record on which the final removal order is based." *Li Hua Yuan v. Att'y Gen.*, 642 F.3d 420, 425 (3d Cir. 2011) (quoting *Zhang v. Gonzales*, 405 F.3d 150, 155 (3d Cir. 2005)). "[T]hat means [we review] only the BIA's decision" unless the BIA's decision "specifically references the IJ's decision." *Id.*

We review legal determinations by the BIA de novo, "subject to established principles of deference." *Wang v. Ashcroft*, 368 F.3d 347, 349 (3d Cir. 2004). We defer "to the BIA's definition of moral turpitude, as well as the BIA's determination that a certain crime involves moral turpitude." *Mehboob v. Att'y Gen.*, 549 F.3d 272, 275 (3d Cir. 2008) (footnote omitted) (citations omitted) (internal quotation marks omitted) (citing *Knapik v. Ashcroft*, 384 F.3d 84, 87 & n.3 (3d Cir. 2004)). We do not defer, however, to the BIA's determination of what the elements are of a particular criminal statute deemed to implicate moral turpitude. *See Knapik*, 384 F.3d at 88.

## III. Analysis

Maradiaga first contends that he is eligible for cancellation of removal under 8

3

U.S.C. § 1229b(b)(1)(C) because his 2002 New York conviction was not for a crime involving moral turpitude. He alternatively argues that he is eligible for cancellation of removal because of the "petty-offense exception" in 8 U.S.C. § 1182(a)(2)(A)(ii)(II). We conclude that Maradiaga's New York conviction is for a crime involving moral turpitude, and that he is ineligible for cancellation of removal notwithstanding the petty-offense exception.

### A. Maradiaga was convicted of a crime involving moral turpitude

The cancellation of removal statute, 8 U.S.C. § 1229b(b)(1)(C), states in relevant part:

> The Attorney General may cancel removal of, and adjust to the status of an alien lawfully admitted for permanent residence, an alien who is inadmissible or deportable from the United States if the alien—
> . . . .
> (C) has not been convicted of an offense under section 1182(a)(2), 1227(a)(2), or 1227(a)(3) of this title.

Both sections 1182(a)(2) and 1227(a)(2) include offenses regarding any noncitizen who is convicted of a "crime involving moral turpitude." 8 U.S.C. § 1182 (a)(2)(A)(i)(I); *id.* § 1227(a)(2)(A)(i)(I). Crimes involving moral turpitude contain conduct that is "inherently base, vile, or depraved." *Jean-Louis v. Att'y Gen.*, 582 F.3d 462, 465 (3d Cir. 2009) (quoting *Knapik*, 384 F.3d at 89). "[M]alicious intent is . . . the essence of moral turpitude." *Id.* at 469 (quoting *Matter of Flores*, 17 I. & N. Dec. 225, 227 (BIA 1980)).

In determining whether a state law conviction is for a crime involving moral

4

turpitude "we[] have historically applied a 'categorical' approach, 'focusing on the underlying criminal statute rather than the alien's specific act.'" *Id.* at 465 (quoting *Knapik*, 384 F.3d at 88) (some internal quotations marks omitted). Under the categorical approach, "we read the applicable statute to ascertain the least culpable conduct necessary to sustain a conviction under the statute." *Partyka v. Att'y Gen.*, 417 F.3d 408, 411 (3d Cir. 2005).

If "a statute covers both turpitudinous and non-turpitudinous acts," we employ the modified categorical approach. *Id.* Under this approach, we "look to the record of conviction to determine whether the alien was convicted under that part of the statute defining a crime involving moral turpitude." *Id.* In such a case, we "examin[e] the record of conviction for the narrow purpose of determining the specific subpart under which the defendant was convicted." *Jean-Louis*, 582 F.3d at 466 (citing *Singh v. Ashcroft*, 383 F.3d 144, 162 (3d Cir. 2004)).

Maradiaga was convicted under § 120.00 of the New York Penal Law, which states:

> A person is guilty of assault in the third degree when:
>
> > 1. With intent to cause physical injury to another person, he causes such injury to such person or to a third person; or
> > 2. He recklessly causes physical injury to another person; or
> > 3. With criminal negligence, he causes physical injury to another person by means of a deadly weapon or a dangerous instrument.

N.Y. Penal Law § 120.00.

Our starting point is whether § 120.00 is divisible—that is, whether it includes both crimes that are morally turpitudinous and crimes that are not. Both parties agree that the statute is divisible because it criminalizes conduct that is not turpitudinous. Thus, we apply the modified categorical approach, turning our focus to "the specific subpart under which the defendant was convicted," or § 120.00(1). *Jean-Louis*, 582 F.3d at 466.

The BIA concluded that Maradiaga's conviction under New York Penal Law § 120.00(1) was a categorical crime involving moral turpitude. The BIA noted that it had previously held, in *Matter of Solon*, 24 I. & N. Dec. 239 (BIA 2007), that § 120.00(1) was a categorical crime involving moral turpitude "given the specific intent element and the requirement of actual physical injury, which includes 'impairment of physical condition or substantial pain.'" App. vol. I at 4.

Maradiaga argues on appeal that this conclusion was in error because although § 120.00(1) "identifies intentional conduct with physical injury," it does not require specific intent to injure. He does not attempt to distinguish his case from *Matter of Solon*, rather he argues that *Solon* is wrongly decided because it interprets § 120.00(1) as having a specific intent requirement.

We begin by examining the elements of the New York criminal statute at issue. "[I]n in determining what the elements are of a particular criminal statute deemed to implicate moral turpitude, we do not defer to the BIA." *Knapik*, 384 F.3d at 88. Thus,

6

we undertake that inquiry here.

Section 120.00(1) criminalizes actions that: "[w]ith intent to cause physical injury to another person . . . cause[] such injury." N.Y. Penal Law § 120.00(1). Thus, the elements of the offense consist of: (1) specific intent to cause, (2) physical injury, and (3) that the intended physical injury actually occurs. *See People v. Juarez*, 827 N.Y.S.2d 564, 567 (N.Y. Cty. Ct. 2006) ("In order to convict a defendant of the misdemeanor of Assault in the Third Degree, the People must prove beyond a reasonable doubt the specific intent of the defendant to cause physical injury, and the causing . . . of such injury."). Further, New York law makes clear that the "physical injury" element requires substantial harm. *See* New York Penal Law § 10.00 (defining physical injury as "impairment of physical condition or substantial pain").

The BIA has determined that § 120.00(1) is a crime involving moral turpitude; we defer to this determination so long as it is reasonable. *Knapik*, 384 F.3d at 87 & n.3. We conclude that it is a reasonable determination. The provision's specific intent requirement and its requirement that non-trivial injury occur meet the criteria the BIA has established for crimes involving moral turpitude. *See Matter of Flores*, 17 I. & N. Dec. at 227 ("[M]alicious intent is . . . the essence of moral turpitude."); *Solon*, 24 I. & N. Dec. at 241 ("[D]e minimis conduct or harm . . . is not ordinarily considered to be inherently vile, depraved, or morally reprehensible.").

Maradiaga responds that § 120.00(1) is not a crime involving moral turpitude

7

because it only requires "general intent and does not involve serious injury," and that "[i]t is more akin to the simple assault statutes that have been held not to be [crimes involving moral turpitude]." Pet'r's Br. at 13. Maradiaga provides no authority or hypotheticals to support his view that non-turpitudinous conduct could be criminalized under § 120.00(1). Further, New York cases interpreting the statute contradict his assertion. *See, e.g.*, *People v. Henderson*, 708 N.E.2d 165, 166 (N.Y. 1999) ("[P]etty slaps, shoves, kicks and the like delivered out of hostility, meanness and similar motives[] are not within the definition of the statute." (citation omitted) (internal quotation marks omitted)); *People v. Martini*, 309 N.Y.S.2d 831, 833 (N.Y. Crim. Ct. 1970) (explaining that under New York Penal Law, "minor assaultive conduct or petty batteries, i.e. so-called 'technical assaults,' are now covered by the offense of harassment," as opposed to the offense of third-degree assault).

In conclusion, we find the BIA's determination reasonable. We defer to its conclusion that § 120.00(1) is a crime of moral turpitude.

## B. Maradiaga is ineligible for cancellation of removal notwithstanding § 1182(a)(2)'s petty-offense exception

Maradiaga alternatively argues that, even if § 120.00(1) is categorically a crime involving moral turpitude, he is still eligible for cancellation of removal because he was not convicted of an "offense" within the meaning of § 1229b(b)(1)(C).

To reiterate, § 1229b makes ineligible for cancellation of removal any noncitizen that has been "*convicted of an offense under* section 1182(a)(2), 1227(a)(2), or

1227(a)(3)." § 1229b(b)(1)(C) (emphasis added). The relevant "offense" in § 1182(a)(2) is a crime involving moral turpitude. However, under § 1182(a)(2) an offense will not be considered a crime involving moral turpitude if it meets the petty-offense exception. *Id*. § 1182(a)(2)(A)(ii)(II). A "petty offense" is one for which (1) the maximum penalty possible does not exceed imprisonment for one year and (2) the noncitizen was not sentenced to a term of imprisonment in excess of 6 months. *Id.*

Maradiaga argues, correctly, that he was not convicted of an offense under § 1182(a)(2) because his offense fits the definition of a petty offense—the maximum penalty for a § 120.00(1) conviction is one year of imprisonment, and Maradiaga received three years' probation.

His second and related charge is that he was not convicted of an "offense" under § 1227(a)(2) because § 1227 applies to deportability not inadmissibility. That is, even though § 1227(a)(2) includes crimes involving moral turpitude, and does not include § 1182(a)(2)'s petty-offense exception, Maradiaga believes that because § 1227(a)(2)'s immigration requirements do not apply to him, he was not convicted of an "offense" under that statute.

The government argues that § 1229b(b)(1)(C) cross references only the *offenses* in the listed sections, not the entirety of those sections, and that as long as Maradiaga was convicted of an offense under any of the statutes listed—§ 1182(a)(2), § 1227(a)(2), or § 1227(a)(3)—he is ineligible for cancellation.

9

The BIA shares the government's view. Relying on its reasoning in *Matter of Cortez*, 25 I. & N. Dec. 301 (BIA 2010), in which it held that "offenses" in § 1229b(b)(1)(C) refers only to language specifically pertaining to the criminal offense in the relevant statutes and not the immigration consequences therein, the BIA concluded that Maradiaga was ineligible for cancellation of removal. Maradiaga recognizes that *Cortez* contradicts his argument, but argues that it was wrongly decided.

This dispute turns on the meaning of § 1229b(b)(1)(C). Thus, we apply the analysis set forth in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–45 (1984). Under *Chevron*, we must first consider "whether Congress has directly spoken to the precise question at issue." 467 U.S. at 842. "If Congress has done so, the inquiry is at an end; the court 'must give effect to the unambiguously expressed intent of Congress.'" *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132 (2000) (quoting *Chevron*, 467 U.S. at 843). If we conclude that Congress has not addressed the issue, that is, if the statute is ambiguous, we "must respect the agency's construction of the statute so long as it is permissible." *Id.* (citing *INS v. Aguirre-Aguirre*, 526 U.S. 415, 424 (1999)).

Maradiaga argues, through implication, that § 1229b(b)(1)(C) is ambiguous because he does not contend that the plain meaning of the statute supports his view and instead advances canons of construction generally applied when statutory language is unclear. We assume arguendo that § 1229b(b)(1)(C) is ambiguous and thus per *Chevron*,

we consider whether the agency's interpretation of the statute is reasonable.

Thus, per *Chevron*, we consider whether the agency's interpretation of the statute is reasonable. We conclude that it is. In *Matter of Cortez*, the BIA explained that only language specifically pertaining to the criminal offense is considered in determining whether a noncitizen is eligible for cancellation of removal. *Matter of Cortez*, 25 I. & N. Dec. at 307. The BIA supported this interpretation by reference to the "language and design of the statute as a whole." *Id.* at 308 (quoting *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988)). Specifically, because in other provisions of §1229b Congress explicitly distinguishes between noncitizens rendered inadmissible under § 1182(a)(2) and those rendered removable under § 1227, the BIA reasoned that, had Congress intended to make such a distinction in § 1229b(b)(1)(C), it would have done so. The BIA further explained that its interpretation did not depart from, and was supported by, its previous holdings. *Id.* at 308–10.

The BIA's interpretation also accords with those of our sister circuits. *See Gonzalez-Gonzalez v. Ashcroft*, 390 F.3d 649, 652 (9th Cir. 2004) ("The plain language of § 1229b indicates that it should be read to cross-reference a list of offenses in three statutes, rather than the statutes as a whole."); *Nino v. Holder*, 690 F.3d 691, 697–98 (5th Cir. 2012) ("Section 1229b(b)(1)(C), without ambiguity, references Section 1227(a)(2) in order to identify the kinds of offenses that will make an alien ineligible for cancellation of removal.").

11

The agency's interpretation was not "arbitrary, capricious, or clearly contrary to the statute." *Knapik*, 384 F.3d at 87 (quoting *Cabral v. INS*, 15 F.3d 193, 195 (1st Cir. 1994)). In light of these circuit opinions and the BIA's reasoned consideration of the issue, we defer to the BIA's determination that § 1229b(b)(1)(C) refers only to the criminal offenses of the relevant statutes, and not the immigration consequences therein.[1]

Therefore, to determine whether Maradiaga is ineligible for cancellation of removal under § 1229b(b)(1)(C), we look to whether Maradiaga was convicted of a crime involving moral turpitude under any of the statutes listed in the provision. While Maradiaga could be eligible for the petty-offense exception of § 1182(a)(2), his conviction falls within the meaning of § 1227(a)(2). He was thus convicted of an "offense" listed in § 1227(a)(2) and is ineligible for cancellation of removal pursuant to § 1229b.[2] *Cf. Gonzalez-Gonzalez*, 390 F.3d at 652–53 (holding that an unadmitted

---

[1] We conclude that the agency's interpretation is reasonable notwithstanding Maradiaga's argument that the rule of lenity requires us to resolve any lack of clarity in his favor. Some courts have used the rule of lenity to support a conclusion that the BIA's interpretation of a statute is unreasonable. *See Vargas v. INS*, 938 F.2d 358, 363 (2d Cir. 1991) (declining to defer to the BIA because its interpretation "runs afoul of the rule that lingering ambiguities in deportation statutes must be construed in favor of the alien" (internal quotation marks omitted)). Here, given the BIA's reasoned and detailed analysis, and Maradiaga's failure to advance any non-conclusory assertions challenging the BIA's view, we cannot conclude that the BIA's interpretation is unreasonable even though the rule of lenity might support an interpretation favorable to Maradiaga.

[2] Maradiaga also argues that he was not convicted of an offense under § 1227(a)(2) because § 1227(a)(2) requires that the crime be committed within five years of admission and he was never "admitted." This argument also fails. As explained above, we defer to the BIA's conclusion that the term "offenses" in § 1229b(b)(1)(C) refers only to the criminal offenses listed in the statutes and does not encompass language referring to

noncitizen who was convicted of a crime of domestic violence—a conviction that renders an admitted noncitizen deportable under § 1227(a)(2) but that does not render an unadmitted noncitizen inadmissible under § 1182(a)(2)—was ineligible for cancellation of removal because "[t]he plain language of § 1229b indicates that it should be read to cross-reference a list of offenses in three statutes, rather than the statutes as a whole").

## IV. Conclusion

For the foregoing reasons, we will deny Maradiaga's petition for review.

---

immigration consequences. That the crime be committed within five years of admission is an immigration consequence, and as such does not inform our analysis. *Cf. Matter of Cortez*, 25 I. & N. Dec. 301, 307 (BIA 2010) (noting that the "statutory language of sections [1182(a)(2), 1227(a)(2), and 1227(a)(3)] pertaining only to aspects of immigration law, such as the requirement that the alien's crime be committed 'within five years . . . after the date of admission,' is not considered").